STATE OF NORTH CAROLINA v. ROBERT LEE McWILLIAMS

No. 77

(Filed 20 January 1971)

1. **Homicide § 24— instructions — verdict of not guilty**

   In this prosecution for second degree murder, the trial court did not err in its charge, when considered as a whole, with respect to the circumstances under which the jury might return a verdict of not guilty.

2. **Criminal Law § 168— construction of charge as a whole**

   A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct.

3. **Criminal Law § 167— harmless and prejudicial error**

   Insubstantial technical errors which could not have affected the result of the trial will not be held prejudicial.

4. **Criminal Law § 168— harmless error in instructions**

   The judge's words may not be detached from the context and incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred.

5. **Criminal Law §§ 24, 32— plea of not guilty — burden of proof**

   Defendant's plea of not guilty puts in issue every essential element of the crime charged.

6. **Homicide § 14— second degree murder or manslaughter — proximate cause**

   To warrant defendant's conviction of second degree murder or manslaughter, the State must prove beyond a reasonable doubt that the victim's death proximately resulted from defendant's unlawful act.

7. **Criminal Law § 78— stipulations**

   A stipulation of fact is an adequate substitute for proof in both criminal and civil cases.

8. **Criminal Law § 78— judicial admissions**

   A judicial admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence; it prevents the party who makes it from introducing evidence to dispute it and relieves the opponent of the necessity of producing evidence to establish the admitted fact.

State v. McWilliams

9. **Criminal Law § 78; Homicide § 24— testimony and stipulation constituting admission — cause of death — instructions**

In this homicide prosecution, defendant's testimony that he split the victim's head open with a stick of wood and defendant's stipulation that the victim's death was caused by a skull fracture resulting from a blow to the head constituted an admission that the head wound inflicted by defendant was fatal and removed the cause of death from contention; consequently, the trial court did not err in failing to charge specifically on the element of proximate cause, the court's general instructions on proximate cause being sufficient.

10. **Robbery § 1— common law robbery defined**

Robbery at common law is the taking of money or goods of any value from the person of another or in his presence, against his will, by violence or putting him in fear, with the felonious intent to deprive the owner of his property permanently and to convert it to the use of the taker.

11. **Criminal Law § 176— review of nonsuit motion — evidence introduced by defendant**

While defendant, by introducing evidence at the trial, waived his right to except on appeal to the denial of his motion for nonsuit at the close of the State's evidence, his later exception to the denial of his motion for nonsuit made at the close of all the evidence draws into question the sufficiency of all the evidence to go to the jury.

12. **Criminal Law § 106— nonsuit — evidence exculpates defendant**

When all the evidence, that of the State and that of defendant, is to the same effect and tends only to exculpate the defendant, his motion for nonsuit should be allowed, but if there is any evidence which reasonably tends to show guilt of the offense charged and from which a jury might legitimately convict, the nonsuit motion should be denied.

13. **Robbery § 4— common law robbery of murder victim — formation of intent to take victim's money**

In this prosecution of defendant for second degree murder and common law robbery of the murder victim, there is no merit in defendant's contention that the charge of common law robbery should have been nonsuited for the reason that the evidence showed that defendant formed the intent to take decedent's money only after the assault had been completed, the evidence as a whole, including conflicting statements by defendant that he struck deceased only in self-defense and also that the victim was on the ground unconscious when he split the victim's head with a pole and took his wallets because he needed money, being sufficient to support a legitimate conclusion by the jury that defendant formed the intent to rob his victim prior to the violent assault.

APPEAL by defendant from *Copeland, S.J.,* 3 June 1970 Criminal Session of NASH Superior Court.

Defendant was charged in separate bills of indictment with

(1) murder and (2) common-law robbery. When the cases were called for trial, the State elected to waive the first-degree murder charge and in that case placed defendant on trial for murder in the second degree "or any lesser included offense." The cases were consolidated for trial, and appointed counsel represented defendant.

The State offered evidence which, in brief summary, tends to show that William Henry Manning, known as "Bloss" Manning, age 70, was found about 7:30 a.m. on the morning of 25 April 1970 beside his pickup truck on a path at the edge of some woods. The body was lying face down on the ground, gagged, both hands and feet tied, and with the head to one side. There was a long gash over one ear.

Dorothy Manning, wife of the deceased, had seen the defendant walking down the road about a mile from the path where the body was found. "I saw Robert McWilliams go down the road walking slow and come back walking fast." She later identified two wallets that were found in the possession of the defendant as belonging to her late husband. Bonnie Hendricks had seen defendant on that same morning walking toward the path where the body was found and within fifty yards of it.

Acting upon the foregoing information, Deputy Sheriff Perry apprehended the defendant, Robert Lee McWilliams, age 22, walking along a paved road about one and one-half miles from the spot where Bloss Manning's body was found. Officer Perry took defendant to the scene of the crime where Sheriff Womble met them. While there the Sheriff compared shoe tracks in the mud with the ridged shoes worn by defendant. "You could see plainly the little ridges in the shoe tracks. The ridges were in the instep of the shoe track. . . . And I asked him if he minded my taking his shoes and comparing them with the tracks. He said, 'No, sir' and pulled them right off and handed them to me. . . . I put them in the tracks and they fitted perfectly."

Defendant was advised of his rights and relieved of the wallet and money which Mrs. Manning later identified as belonging to her husband. He then made a statement to the sheriff that Bloss Manning picked him up as he walked down the road and asked him to help load some wood; that a controversy arose when Bloss called the defendant "no good"; that Bloss bragged

about the hogs he owned and defendant replied that the hogs did not belong to Bloss but to someone else; that Bloss then flew into a rage and tried to strike defendant; that defendant blocked the blow, knocked Bloss down with his left fist, then got a post and hit Bloss in the head three or four times with it. When the sheriff indicated that he had not seen this post, defendant said: "If you go back and look on the truck you will find a piece of wood that one end of it is bloody. That's what I used." The sheriff returned to the truck and found the bloody stick of wood referred to by defendant. The sheriff further testified that defendant said he took two billfolds from Bloss, threw the identification from one of them by the side of the road, kept one wallet containing three twenty-dollar bills, and put the other wallet in a trunk in his room at the house where he stayed. All these items were later recovered from the exact places where defendant said they would be found. He had on his person one of the wallets containing the three twenty-dollar bills.

Defendant judicially admitted by way of stipulation that the cause of Bloss Manning's death was an acute skull fracture with cerebral contusions caused by a blow to the head of the deceased.

Against the advice of his counsel, defendant took the stand as a witness in his own behalf and testified substantially to the same facts related by the sheriff. He further stated that he was afraid Bloss Manning would kill him; that he knew Bloss had a bad temper and believed that he had a gun that morning; that he hit Bloss with the post to protect himself; that he intended to run away and go to Alabama but was apprehended by Officer Perry; that he had heard of an incident between Bloss and a man named L. T. McClain and knew Bloss had a bad temper; "I was really afraid he was going to shoot me because I had heard of the incident between him and L. T. and also because I knew Mr. Bloss from last summer and what his attitude was. He had a pretty bad temper."

The jury found defendant guilty of murder in the second degree in one case and guilty of common-law robbery in the other. The Court thereupon sentenced defendant to prison for a term of twenty-eight to thirty years on the second-degree murder conviction and eight to ten years on the common-law robbery conviction, to run consecutively. Defendant appealed

to the Court of Appeals and the case was transferred to the Supreme Court under its general order dated July 31, 1970.

*Moore & Diedrick, by Lawrence G. Diedrick, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, by Eugene Hafer, Assistand Attorney General for the State.*

HUSKINS, Justice.

Defendant brings forward three assignments of error, which will be discussed in the order in which they appear in his brief.

[1] Defendant contends the court erred in its charge with respect to the circumstances under which the jury might return a verdict of not guilty, and quotes isolated portions of the charge in connection therewith. This assignment is without merit. At one point the court charged: "If from all the evidence you have a reasonable doubt that he did hit and kill the deceased with malice, you will acquit the defendant of the charge of murder in the second degree and consider whether or not he is guilty of manslaughter." At another point the court charged: "In order to be guilty at all, the defendant must have fought willingly but wrongfully. If he fought willingly but rightfully, that is, exclusively in his own self-defense, no excessive force being used, he should be acquitted, but he is entitled to have the jury judge his conduct by circumstances as they reasonably appeared to him at the time of the homicide." Again the court said in its charge: "Gentlemen, it is your duty to determine by your verdict whether the defendant is guilty of murder in the second degree, manslaughter or not guilty, and you will return one of three verdicts depending upon how you find. You will find the defendant guilty of murder in the second degree or you will find the defendant guilty of manslaughter or you will find him not guilty."

[2-4] The foregoing instructions were given in connection with the portions of the charge which defined, explained, and applied the law to second-degree murder, manslaughter, and defendant's plea of self-defense. We think the jury clearly understood the circumstances under which it should return a verdict of not guilty. A charge must be construed contextually, and isolated portions of it will not be held prejudicial when the charge as a

whole is correct. *State v. Cook,* 263 N.C. 730, 140 S.E. 2d 305 (1965) ; *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334 (1964) ; *State v. Taft,* 256 N.C. 441, 124 S.E. 2d 169 (1962). If the charge as a whole presents the law fairly and clearly to the jury, the fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal. *State v. Hall,* 267 N.C. 90, 147 S.E. 2d 548 (1966). Furthermore, insubstantial technical errors which could not have affected the result will not be held prejudicial. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955). The judge's words may not be detached from the context and the incidents of the trial and then critically examined for an interpretation from which erroneous expressions may be inferred. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593 (1969) ; *State v. Jones,* 67 N.C. 285 (1872).

[9]  Defendant says the trial judge erroneously assumed that the proximate cause of Bloss Manning's death was admitted and therefore erred in failing to charge on the element of proximate cause. This constitutes his second assignment of error.

[5, 6]  Defendant's plea of not guilty put in issue every essential element of the crime charged. *State v. McLamb,* 235 N.C. 251, 69 S.E. 2d 537 (1951) ; *State v. Courtney,* 248 N.C. 447, 103 S.E. 2d 861 (1958). To warrant defendant's conviction upon the charge of second-degree murder or manslaughter, the State must produce evidence sufficient to establish beyond a reasonable doubt that the death of Bloss Manning proximately resulted from defendant's unlawful act. *State v. Hendrick,* 232 N.C. 447, 61 S.E. 2d 349 (1950) ; *State v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908 (1949). Defendant insists that he made no admission or statement that he killed the deceased and that the cause of death should have been submitted to the jury under proper instructions.

[9]  The record discloses that defendant, in open court, judicially admitted that "the cause of death was an acute skull fracture with cerebral contusions caused by a blow to the head of the deceased." In his own testimony defendant swore that he struck Bloss Manning in the mouth with his fist and knocked him down; that while Bloss was lying on the ground "not moving" he picked up a stick of wood from the bed of the truck and struck Bloss once or twice "beside the head" with it; that he split his head open with the stick and saw blood all over the

place; that he took two wallets from the victim's pockets, tied his hands and feet and placed a gag in his mouth; that he then left the scene. All the evidence shows he was picked up by Officer Perry within an hour. Meanwhile, Bloss Manning had already been _found—bound hand and foot, gagged, and with a big gash four inches long across the side of his head. *He was dead.*

[7-9] This evidence and defendant's judicial admission establish beyond a reasonable doubt that death was caused by the vicious blows to the victim's head administered by defendant. Defendant swore he split the victim's head open *with the blows he struck* and stipulated that death was caused by a skull fracture resulting from a blow to the head. This is sufficient to remove the cause of death from contention and constitutes an admission that the head wound inflicted by defendant was fatal. Certainly there is no suggestion and no evidence that anyone else inflicted a head wound on Bloss Manning. A stipulation of fact is an adequate substitute for proof in both criminal and civil cases. *State v. Powell*, 254 N.C. 231, 118 S.E. 2d 617 (1961). "Such an admission is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence. It is binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent of the necessity of producing evidence to establish the admitted fact. In short the subject matter of the admission ceases to be an issue in the case. . . . " Stansbury, North Carolina Evidence (2d Ed. 1963), § 166.

[9]  *State v. Ramey*, 273 N.C. 325, 160 S.E. 2d 56 (1968), and *State v. Redman*, 217 N.C. 483, 8 S.E. 2d 623 (1940), relied on by defendant, are readily distinguishable. In each of those cases the defendant admitted that he shot the deceased, but not that he inflicted a fatal wound. Here, defendant testifies that he struck the deceased in the head and judicially admits that an acute skull fracture caused by a blow to the head was fatal. Under all the facts of the case this is tantamount to an admission that defendant's conduct was the proximate cause of death; hence, the court's general instructions on proximate cause were sufficient. This assignment of error is overruled.

[13]  Finally, defendant assigns as error the denial of his motion for nonsuit on the common-law robbery charge. He

argues in his brief that "[t]he record is void of any evidence from which the jury could find that the violence used in this case was simultaneous with and for the purpose of feloniously taking the goods of Bloss Manning. The items of personal property were taken from the deceased only after he had fallen to the ground unconscious. The taking of the wallets and money was merely an afterthought of the defendant."

[10]  "Robbery at common law is the felonious taking of money or goods of any value from the person of another or in his presence against his will, by violence or putting him in fear." *State v. McNeely,* 244 N.C. 737, 94 S.E. 2d 853 (1956) ; *State v. Bell,* 228 N.C. 659, 46 S.E. 2d 834 (1948). As an essential element of the offense the taking must be done with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker. *State v. Lawrence,* 262 N.C. 162, 136 S.E. 2d 595 (1964) ; *State v. Smith,* 268 N.C. 167, 150 S.E. 2d 194 (1966).

[11, 12]  By introducing testimony at the trial, defendant waived his right to except on appeal to the denial of his motion for nonsuit at the close of the State's evidence. His later exception to the denial of his motion for nonsuit made at the close of *all* the evidence, however, draws into question the sufficiency of all the evidence to go to the jury. *State v. Norris, supra* (242 N.C. 47, 86 S.E. 2d 916) ; *State v. Gay,* 251 N.C. 78, 110 S.E. 2d 458 (1959) ; *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969) ; G.S. 15-173. And when all the evidence, that of the State and that of the defendant, is to the same effect and tends only to exculpate the defendant, his motion for judgment as of nonsuit should be allowed. *State v. Fulcher,* 184 N.C. 663, 113 S.E. 769 (1922) ; *State v. Hamby,* 276 N.C. 674, 174 S.E. 2d 385 (1970). But if there is any evidence which reasonably tends to show guilt of the offense charged and from which a jury might legitimately convict, the nonsuit motion should be denied. *State v. Bogan,* 266 N.C. 99, 145 S.E. 2d 374 (1965). Our inquiry is thus limited to whether there is sufficient evidence to support the conviction. *State v. Thompson,* 227 N.C. 19, 40 S.E. 2d 620 (1946).

[13]  Here, defendant's own statement is inculpatory as well as exculpatory. He says on the one hand that he struck deceased only in self-defense and, on the other hand, he told the sheriff

that his victim was on the ground unconscious when he split his head open with the stick or pole and took both wallets "because he didn't have any money, needed money . . . . " In addition to his statement, circumstantial evidence belies the truth of that portion of his statement exonerating him and from which the jury might legitimately conclude that he formed the intent to rob his victim prior to the violent assault. The evidence as a whole and the conflicting inferences arising from defendant's statement itself were sufficient to make his guilt a question for the jury. *State v. Mitchum,* 258 N.C. 337, 128 S.E. 2d 665 (1962). Nonsuit of the robbery charge was properly denied.

No error.