STATE OF NORTH CAROLINA v. WOODROW CURRY ·

No. 7423SC1074

(Filed 2 April 1975)

1. **Criminal Law § 91— reading of calendar before jury — no prejudice — continuance properly denied**

    The trial court did not .err in denying defendant's motion for a continuance made after the solicitor read the court· calendar in the presence of prospective jurors, though the calendar contained charges against defendant other than the charges for which he was tried and convicted, since defendant failed to show that he was prejudiced by the reading.

2. **Homicide § 21— shooting of bar owner — sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a second degree murder prosecution where it tended to show that defendant and others were at a bar and grill where fighting erupted, the owner of the establishment demanded that the fighting stop, when another fight commenced the owner fired several shots into the ceiling and announced that the bar was closed, and defendant pointed a gun at the owner and shot him.

APPEAL by defendant from *Lupton, Judge*. Judgment entered 4 October 1974 in Superior Court, WILKES County. Heard in the Court of Appeals 11 March 1975.

Defendant was charged with first degree murder. In open court the solicitor announced that the defendant would be tried for second degree murder or manslaughter, as the evidence might warrant. Upon defendant's plea of not guilty the jury returned a verdict of guilty of voluntary manslaughter. From judgment sentencing him to imprisonment for a term of ten years, defendant appealed.

The evidence, taken in the light most favorable to the State, tended to show that following an automobile race in North Wilkesboro on 21 April 1974 a group of people gathered at a bar and grill known as Kathy's Place; that deceased, R. T. Staley, was one of the owners of Kathy's Place and was there apparently in charge on the day he was killed; that a fight erupted involving the defendant and resulting in injuries to several people, and that despite requests from Staley that the fighting stop, a few minutes later another fight began.

Other evidence offered . by the State tended to show that Staley attempted to stop the fighting, but when the fighting con-

tinued, Staley got a gun and fired several shots into the ceiling and announced that the bar was closed. No argument or threats had been exchanged between Staley and the defendant. One of the State's witnesses, however, testified that at the time Staley fired at the ceiling, she heard someone say, "you son of a bitch" and looked around to see the defendant with a gun pointed straight at Staley. The witness further testified that the defendant shot Staley, and several witnesses testified that they observed the defendant with a gun shooting in the direction of Staley. Testimony of an SBI agent, who investigated the shooting, was offered by the State to corroborate the testimony of several of the State's witnesses. A physician, stipulated to be an expert in pathology, testified that Staley's death was caused by multiple organ perforations resulting from three gunshot wounds.

Defendant's evidence tended to show that one of the shots fired by Staley struck him in the arm, that he knew Staley's reputation and character in the community was that he was a violent and dangerous fighting man because Staley previously had shot one Thurmond Brown; and that after Staley shot him, defendant brought out his own gun and shot five times toward Staley. One of the witnesses for the defendant testified that he, himself, had been hit in the arm when Staley fired the shots. Another witness for the defendant also testified that Staley had a reputation for being a dangerous violent fighting man and a third witness testified that he observed that the defendant had been shot in the left shoulder and arm. Defendant also offered the testimony of an SBI agent to the effect that he found what appeared to be a bullet in an air conditioning unit in a window in the southeast corner of Kathy's Place. Another witness testified he saw Staley fire his gun toward the front door.

*Attorney General Edmisten, by Assistant Attorney General Walter E. Ricks III for the State.*

*Franklin Smith for defendant appellant.*

MORRIS, Judge.

Defendant has abandoned all but three of his assignments of error for failure to argue them in his brief. Rule 28, Rules of Practice in the Court of Appeals of North Carolina.

State v. Curry

[1]  The first assignment of error argued in defendant's brief relates to the denial of his motion for a continuance. Defendant maintains it was prejudicial error for the trial court to deny his motion for a continuance after the solicitor read the court calendar in the presence of prospective jurors, since the calendar contained charges against the defendant other than the charges for which he was tried and convicted. We find no merit in defendant's argument that the minds of the jurors in this case were prejudiced by their hearing other charges against the defendant prior to his trial. We note that the record reveals that the only charge against the defendant read in the presence of prospective jurors, other than the one for which defendant was tried and convicted, was the charge of robbery with a dangerous weapon. The prospective jurors were not in the courtroom when other charges against the defendant were read aloud by the solicitor. Defendant has failed to show he was prejudiced by the reading of this charge. Moreover, counsel for the defendant had ample opportunity to challenge prospective jurors on voir dire if he felt they were influenced by the reading of the charge.

Defendant next contends that the trial court committed prejudicial error in refusing to admit testimony as to the dangerous character of the deceased. We fail to see how defendant was prejudiced by the trial court's failure to permit such testimony earlier in the trial when both the defendant and one of his witnesses later were permitted to testify that Staley had a reputation and character in the community for being a violent and dangerous fighting man. This assignment of error is overruled.

[2]  Defendant's final assignment of error relates to the denial of his motions for judgment as of nonsuit and directed verdict.

"By introducing testimony at the trial, defendant waived his right to except on appeal to the denial of his motion for nonsuit at the close of the State's evidence. His later exception to the denial of his motion for nonsuit made at the close of *all* the evidence, however, draws into question the sufficiency of all the evidence to go to the jury." *State v. Davis,* 24 N.C. App. 683, 211 S.E. 2d 849 (1975), citing *State v. Mull,* 24 N.C. App. 502, 211 S.E. 2d 515 (1975), and *State v. McWilliams,* 277 N.C. 680, 687, 178 S.E. 2d 476 (1971).

Considering the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom, as we must on motion for nonsuit, *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968), we conclude there is plenary evidence in the record from which the jury could find defendant committed the offense charged. Defendant's motions for judgment as of nonsuit were properly denied.

Defendant received a fair trial free from prejudicial error.

No error.

Judges BRITT and ARNOLD concur.