STATE OF NORTH CAROLINA v. MERRITT WILLIAMS DRAYTON

No. 529A87

(Filed 8 December 1988)

1. **Homicide § 15.5— murder prosecution—testimony as to cause of death—relevant**

     The trial court did not err in a first degree murder prosecution by allowing a pathologist to testify regarding the victim's death by asphyxiation, even though the jury found defendant guilty on the theory of felony murder, because the case was submitted on both felony murder and premeditated and deliberate murder and the testimony was relevant for the purpose of showing the manner and means by which the killing was carried out.

2. **Criminal Law § 135.7— murder—instructions on sentencing procedure—no error in context**

     The trial court did not err in a first degree murder prosecution by instructing the jury that "this [sentencing] proceeding may be conducted before you and most likely will or another jury." When the instruction is read in its full context, the jury could only gather that a sentencing hearing would not be held until and unless the defendant was first convicted of murder in the first degree and that, if a sentencing hearing was required, it would most likely be conducted before them.

APPEAL by defendant from judgment sentencing him to life imprisonment for conviction of murder in the first degree, said judgment imposed by *Freeman, J.*, at the 27 July 1987 session of Superior Court, FORSYTH County. Heard in the Supreme Court 10 October 1988.

*Lacy H. Thornburg, Attorney General, by Reginald L. Watkins, Special Deputy Attorney General, for the state.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant.*

MARTIN, Justice.

Upon a proper bill of indictment, defendant was tried and convicted of murder in the first degree and sentenced to life imprisonment. We conclude that defendant had a fair trial and find no error.

The state's evidence showed that on 10 December 1985 Blanche Bryson was sixty-five years old and lived alone in Winston-Salem. She owned a television set which she kept in the den of her home. She also owned a 1972 Buick Skylark automobile. On 10 December 1985, the date on which she was last seen alive, she had attended a social club meeting with several of her friends. At the club meeting $350 was collected and given to Mrs. Bryson for the club's expenses in connection with a Christmas party that had been planned for later that month.

Mrs. Harper was to go by Mrs. Bryson's house later that evening to pick her up to go to a party. Sometime around 7:30 Mrs. Harper and her husband went to Mrs. Bryson's home. As they arrived, they saw Mrs. Bryson's Buick Skylark car backing out of the driveway. As the car entered the street, it swerved on the road and Mrs. Harper wondered who was driving the car. She thought that Mrs. Bryson was having car trouble and attempted to follow the car but lost sight of it. She went on to the party and found that Mrs. Bryson was not there. Mrs. Harper thereupon attempted to call her, but the line was busy. Mr. and Mrs. Harper returned to the Bryson home and noticed that Mrs. Bryson's car was not there. After knocking on the door and receiving no answer, they went to the home of a neighbor and explained what had happened. The neighbor, Bernice Black, called Jeffrey Bryson, Mrs. Bryson's son. Mrs. Black and the Harpers went to Mrs. Bryson's home to meet Jeffrey. Jeffrey had a key to the house and he opened the door and found the body of his mother lying facedown on the living room floor. Mrs. Black, a private-duty nurse, checked Mrs. Bryson's pulse and said, "I think she's dead." Jeffrey described the condition of the house as looking as if someone had just ransacked it. Things were out of place and had been knocked over. The kitchen floor was littered and the TV had been moved from the den to the middle of the hallway. Being unable to get a dial tone on his mother's telephone, Jeffrey went to a neighbor's home and called the police, who arrived shortly thereafter.

About 9:38 that evening, Officer J. W. Pegram found Mrs. Bryson's Buick Skylark, containing, among other things, several clothing items, parked about a mile from her residence.

Officer J. D. Cook testified that when he arrived at the victim's house Mrs. Bryson's body was lying on the floor with an electrical cord wrapped around her neck. Dr. Wilson Russell, who performed the autopsy, testified that her death was caused by strangulation. Sergeant T. A. Freeland found a brown toboggan near Mrs. Bryson's body.

Several months later Detective Theresa Hicks received a message from the defendant, who was at that time in the Forsyth County Jail on unrelated charges. She and another officer went to the jail and the defendant told her that he wanted to talk with her about the Bryson murder. After being given his constitutional warnings, the defendant made an incriminating statement in which he detailed how he and a man known as the "Lieutenant" broke into the Bryson home for the purpose of stealing. They moved the TV from the den into the hallway and were preparing to take it from the dwelling when Mrs. Bryson entered the house. The Lieutenant grabbed Mrs. Bryson and threw her to the floor. While the defendant held Mrs. Bryson's hands and arms, the Lieutenant proceeded to choke her with an electrical cord. They hurriedly left the scene after the Lieutenant went through Mrs. Bryson's pocketbook and took something from it. The defendant left his brown toboggan in Mrs. Bryson's house.

[1] The defendant presents two issues for our determination. First he contends that the court committed reversible error by allowing the pathologist, Dr. Russell, to give the following testimony:

Q. Did you determine a cause of death?

A. Yes.

Q. What was that?

A. Cause of death is asphyxia due to ligature strangulation.

Q. Now, tell us what that means in layman's terms.

A. Okay. That means that the deceased died as a result of lack of oxygen because of obstruction of airway passages — airway and/or vascular passages from the neck. . . .

State v. Drayton

. . . . .

Q. How long would it take a person, though, to die?

MR. MAUNEY: Objection.

MR. REDDEN: I object, Your Honor.

COURT: Overruled.

WITNESS: Overruled?

A. It would—that—again, I can't really say, but that would take—it may take a few more minutes.

MR. MAUNEY: Move to strike, Your Honor, if he can't really say.

COURT: Motion allowed.

Q. In this period while the person was being strangled, what would the body be going through during that period?

MR. MAUNEY: Objection.

COURT: Overruled. Go ahead.

A. Well, again that's—that's hard to say. The body would be —physiologically would be going through—

MR. MAUNEY: Again move to strike, Your Honor.

COURT: Motion denied. Go ahead.

A. The body would be going through the effects of a decreasing lack of oxygen which has variable effects on a person.

Q. Would there be any pain associated with that?

MR. MAUNEY: Objection.

COURT: Overruled.

A. Just from the sheer lack of oxygen probably not pain but a tremendous sense of anxiety or—

MR. MAUNEY: Object and move to strike, Your Honor, as not responsive.

COURT: Overruled. Go ahead.

Q. Go ahead.

A. A sense of urgency, frenzy, anxiety from the effects of lack of oxygen probably.

Defendant contends that this testimony is completely irrelevant to any issue properly before the jury and therefore he should be awarded a new trial. However, we conclude that the admissibility of this testimony is controlled by *State v. Prevette*, 317 N.C. 148, 345 S.E. 2d 159 (1986). In *Prevette*, similar testimony was offered. This Court found that the manner and means by which the killing was carried out, including the force used and its brutal circumstances, constituted substantial evidence to be considered by the jury in determining whether the killing was premeditated and deliberated. *Prevette* was a case also involving the killing of the victim by asphyxiation, the victim being tightly bound hand and foot at the time.

While it is true that in the instant case the jury found the defendant guilty upon the theory of felony murder, the case was submitted to the jury on both the felony murder theory and premeditated and deliberate murder. The testimony of Dr. Russell was competent and admissible and was relevant for the purpose of showing the manner and means by which the killing was carried out with respect to the issue of whether the killing was a premeditated and deliberate murder. *State v. Prevette*, 317 N.C. 148, 345 S.E. 2d 159.

[2]  Last the defendant argues that the trial judge erred in his charge to the jury. The challenged instruction is:

> Now, as I've told you before, the Defendant is charged with first-degree murder; and in the event that the Defendant is convicted of murder in the first-degree, the Court will conduct a separate sentencing proceeding to determine whether the Defendant should be sentenced to death or life in prison.

> This proceeding may be conducted before you and most likely will or another jury. It will be conducted, if necessary, as soon as practical after any verdict of guilty of first-degree murder is returned. If that time comes, you will receive separate sentencing instructions.

The defendant argues that the judge in the above instructions expressed an opinion, in violation of N.C.G.S. § 15A-1232. We disagree. Challenges to the trial court's instructions require the appellate court to review the charge contextually, and isolated portions of it will not be held prejudicial when the charge as a whole is correct. *State v. McWilliams*, 277 N.C. 680, 178 S.E. 2d 476 (1971). Here the court inadvertently used the words "and most likely will" in the sentence: "This proceeding may be conducted before you and most likely will or another jury." However, when the quoted portion of the charge is viewed in its full context, we conclude no error was committed by the trial judge. In the first sentence the judge instructed the jury: *"[I]n the event* that the Defendant is convicted of murder in the first-degree, the Court will conduct a separate sentencing proceeding . . . ." Further, immediately after the critical sentence the court stated: *"If that time comes*, you will receive separate sentencing instructions." The court then stated: "It will be conducted, *if necessary,* as soon as practical after any verdict of guilty of first-degree murder is returned." (Emphases added.) We conclude that when the challenged instruction is read in its full context it is clear that the jury could only gather from these instructions that a sentencing hearing would not be held until and unless the defendant was first convicted of murder in the first degree. Further, the words "and most likely will" could only mean to the jurors that if a sentencing hearing was required, it would most likely be conducted before them.

No error.