IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-61

No. 14A21

Filed 11 June 2021

IN RE INQUIRY CONCERNING A JUDGE, NOS. 19-136 & 19-242

C. RANDY POOL, Respondent

This matter is before the Court pursuant to N.C.G.S. §§ 7A-376 and -377 upon a recommendation by the Judicial Standards Commission entered on 18 December 2020 that Respondent C. Randy Pool, a Judge of the General Court of Justice, District Court Division, Judicial District 29A, be censured for conduct in violation of Canons 1, 2A, 2B, 3A(4), and 3A(5) of the North Carolina Code of Judicial Conduct and for conduct prejudicial to the administration of justice that brings the judicial office into disrepute in violation of N.C.G.S. § 7A-376. This matter was calendared for argument in the Supreme Court on 27 April 2021 but determined on the record without briefs or oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure and Rule 2(c) of the Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission.

*No counsel for Judicial Standards Commission or Respondent.*

ORDER OF CENSURE

¶ 1   By the recommendation of the North Carolina Judicial Standards Commission (the Commission), the issue before this Court is whether Judge C. Randy Pool

*Order of the Court*

(respondent) should be censured for violations of Canons 1, 2A, 2B, 3A(4), and 3A(5) of the North Carolina Code of Judicial Conduct, and pursuant to N.C.G.S. § 7A-376(b) for conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

¶ 2     On 21 August 2019, the Commission filed a Statement of Charges against respondent alleging violations of Canons 1, 2A, and 2B. On 7 October 2019, respondent filed his answer. On 19 March 2020, the Commission filed an Amended Statement of Charges that included new allegations, charging respondent with violations of Canons 1, 2A, 2B, 3A(4), and 3A(5) in the following manner:

> (1) by engaging in sexual misconduct while serving as and exploiting his position as Chief Judge of his judicial district through a pattern of predatory sexual advances towards numerous women in Respondent's community, many of whom were involved in matters pending in the district where Respondent served as Chief Judge; (2) by demonstrating a pattern of failing to diligently discharge his judicial duties for the period from at least November 2016 until his retirement in November 2019; (3) by misusing the prestige of his judicial office to solicit assistance from local law enforcement relating to the attempted extortion of Respondent[1] . . . ; (4) by making material misrepresentations to law enforcement agents during the investigation of [an] attempt to extort money from Respondent; and (5) by making material misrepresentations to the Commission during its investigation into Inquiry No. 19-136.

---

[1] Respondent's inappropriate electronic communications and exchange of nude photographs resulted in an extortion attempt by one woman, which led to an investigation by law enforcement agencies.

On 9 November 2020, the Commission and respondent entered into a Stipulation Pursuant to Commission Rule 18 (the Stipulation). The parties stipulated to the following findings of fact:

> 1. Respondent was first appointed to the district court in 1999 and served as the Chief Judge of District 29A from 2006 until his retirement effective December 1, 2019.
>
> . . . .
>
> 3. For the period beginning in 2016/2017 through June 2019, Respondent was an active user of the social media platform Facebook ("FB") and had a single FB account for both personal and campaign purposes. Respondent ceased the use of his FB account in or about June 2019.
>
> 4. A review of Respondent's Facebook activity for the period from November 1, 2018 through May 9, 2019 establishes that: Respondent identified himself on his Facebook page as the Chief District Court Judge located in Marion, North Carolina; Respondent's Facebook page was public and open to anyone to see his posts and comments; Respondent had thousands of "friends" on Facebook; and Respondent was a very active user of Facebook, frequently posting his own photos or comments or commenting on posts of other Facebook users.
>
> . . . .
>
> 6. Although some of Respondent's FB messages have been deleted, a review of Respondent's existing FB messages during the period from November 2018 to May 2019 shows that Respondent, who is married, knowingly and willfully initiated and engaged in conversations with at least 35 different women that ranged from inappropriate and flirtatious to sexually explicit. In some cases, Respondent and the female also had telephone conversations, exchanged texts and had personal meetings (including in some cases sexual encounters).

7.      Respondent knowingly and willfully engaged in FB conversations of a sexual nature with 12 women during the period from at least November 2018 through July 2019[2] . . . .

. . . .

9.      In addition . . . , Respondent also made either inappropriate or flirtatious comments through FB messages to women who were required to appear or work in Respondent's court in their professional capacities[.]

. . . .

11.      Respondent's FB records from the period from November 2018 to May 2019 when compared to official reports of Respondent's time on the bench show that Respondent engaged in extensive FB activity, including posts, comments and private messages, while Respondent was reported as being in court.  Respondent's FB records also establish that Respondent routinely sought to arrange personal meetings with women he contacted on FB either during breaks and recesses from court, before court convened or immediately after court adjourned.  Court personnel assigned in Respondent's courtroom in McDowell County regularly observed that Respondent was frequently on his cell phone while on the bench and would often "disappear" during recesses and lunch breaks, and that Respondent would often recuse in cases where the stated reason appeared to be very tenuous, and at other times would continue cases at such a high rate that it would make their jobs more difficult.  While Respondent did not engage in any FB or other conversations on his cell phone at times when he was actively presiding in a case,

---

[2] While the parties stipulated to the fact that respondent stopped using his FB account in or about June 2019, the stiplations indicate that one exchange included text messages that were sent in July 2019.  From November 2018 through May 2019, respondent communicated, via Facebook, through inappropriate messages with at least sixteen additional women, often seeking photographs of them or sharing photographs of himself.  In addition, respondent had ex parte discussions through Facebook regarding pending proceedings in his district.

he did use his cell phone extensively during times on the bench that did not require his direct attention.

. . . .

26.     Prior to the incidents described herein that began in or about 2017, Respondent had enjoyed a long and distinguished career as a judge of his district for almost twenty years. As Chief District Court Judge, Respondent made a number of significant contributions to the administration of justice during his 13 years in that position. Upon being named Chief Judge, Respondent immediately instituted a Continuance Policy for his district that all judges followed and successfully eliminated significant back log in his district. Respondent also created a new Truancy Court for McDowell and Rutherford County at least twelve years ago where he and his colleagues volunteered their time after court to meet with parents, grandparents and students to emphasize and encourage students to stay in school, be present each day, and to work hard to get a good education.

27.     Respondent has also actively been engaged in his community. . . .

28.     Other than as set forth herein, Respondent has enjoyed a good reputation as a judge for being professional and for diligently discharging his judicial duties while presiding in court.

29.     Respondent has also undertaken significant efforts to determine the cause of his sexual misconduct and to address the problems in his personal life. . . . His primary care physician conducted a physical examination in early October 2020 and ordered an MRI, which showed mild atrophy or shrinkage of the front and the left temporal lobes of his brain. . . . [O]n or about October 20, 2020, Respondent was evaluated by a physician . . . . That evaluation resulted in a diagnosis of early stage Frontotemporal Dementia, a disease which can manifest itself through a lack of control of sexual impulses. . . .

Frontotemporal Dementia is also recognized as a progressive and terminal illness with a life expectancy of 6–8 years after symptoms manifest . . . .

. . . .

31.     Respondent agrees that based upon the nature of his misconduct and his recent diagnosis of early signs of dementia, he will not seek a commission as an emergency judge or a retired recall judge, nor will he attend future judicial conferences or continuing judicial education (CJE) programs offered to judges of the State of North Carolina.

The parties further stipulated to the following Code and statutory violations:

1.     Respondent acknowledges and agrees that the factual stipulations contained herein are sufficient to prove by clear and convincing evidence that he violated the following provisions of the North Carolina Code of Judicial Conduct:

    a.     he failed to personally observe appropriate standards of conduct to ensure that the integrity of the judiciary is preserved in violation of Canon 1;

    b.     he failed to conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A;

    c.     he allowed his personal relationships . . . to influence his official judgment and conduct, in violation of Canon 2B;

    d.     he abused the prestige of his judicial office in seeking favors and influence in the handling of the investigation by local law enforcement and the SBI in violation of Canon 2B;

    e.     he engaged in improper *ex parte* or other communications concerning pending proceedings in

violation of Canon 3A(4);

> f.　　his Facebook activity while in court and consistent efforts to take breaks from court to meet women interfered with his duty to diligently discharge his judicial duties in violation of Canon 3A(5).

> 2.　　Respondent further acknowledges and agrees that the stipulations contained herein are sufficient to prove by clear and convincing evidence that his actions constitute willful misconduct in office and that he willfully engaged in misconduct prejudicial to the administration of justice which brought the judicial office into disrepute in violation of N.C.[G.S.] § 7A-376.

¶ 5　　On 13 November 2020, the Commission held a disciplinary hearing in this matter.

¶ 6　　On 18 December 2020, the Commission filed its Recommendation of Judicial Discipline. The Commission made the following conclusions of law:

> 1.　　Commission Counsel, Respondent and Counsel for Respondent, all of whom executed the Stipulation, agreed that the factual stipulations contained therein were sufficient to prove by clear and convincing evidence that Respondent had violated Canons 1, 2A, 2B, 3A(4) and 3A(5) of the North Carolina Code of Judicial Conduct. . . . Upon its independent review of the stipulated facts and the Code of Judicial Conduct, the Commission agrees.

> 2.　　Canon 1 of the Code of Judicial Conduct requires that a judge must "participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved." Canon 2A of the Code of Judicial Conduct requires that a judge "should conduct himself/herself at all times in a manner that promotes public confidence in the

integrity and impartiality of the judiciary." The Commission concludes that Respondent's failure to personally observe appropriate standards of conduct in and out of the courtroom, his conduct in creating the perception among local law enforcement that he wanted a favor in the matter involving Ms. [T.], and his conduct in making misleading statements to the SBI and the Commission violated Canon 1 and Canon 2A.

3. Canon 2B of the Code of Judicial Conduct provides that a judge "should not lend the prestige of the judge's office to advance the private interest of others." The Commission concludes that Respondent violated Canon 2B by using his office to assist various female litigants as found in the Findings of Fact, including his conduct in using his position as Chief Judge to direct a local attorney to assist a litigant with whom Respondent was having a sexual relationship and to otherwise use his office to assist her in her divorce proceeding.

4. Canon 3A(4) of the Code of Judicial Conduct provides that "except as authorized by law, [a judge may] neither knowingly initiate nor knowingly consider ex parte or other communications concerning a pending proceeding." The Commission concludes that Respondent violated Canon 3A(4) through his conversations with the women as described herein relating to pending proceedings in his district.

5. Canon 3A(5) of the Code of Judicial Conduct provides that a "judge should dispose promptly of the business of the court." The Commission concludes that the Stipulation of Facts establishes that Respondent violated Canon 3A(5) through his constant cell phone use on the bench, frequent breaks to have conversations or physical encounters with women he contacted through Facebook, and frequent continuances and recusals (some of which were created by his sexual misconduct).

6. The Preamble to the Code of Judicial Conduct provides that a "violation of this Code of Judicial Conduct

may be deemed conduct prejudicial to the administration of justice that brings the judicial office into disrepute, or willful misconduct in office, or otherwise as grounds for disciplinary proceedings pursuant to Article 30 of Chapter 7A of the General Statutes of North Carolina." In addition, Respondent has stipulated not only to his violations of the Code of Judicial Conduct, but also to a finding that his conduct amounted to conduct prejudicial to the administration of justice and willful misconduct in office. . . . The Commission in its independent review of the stipulated facts and exhibits and the governing law also concludes that Respondent's conduct rises to the level of conduct prejudicial to the administration of justice and willful misconduct in office.

7. The Supreme Court defined conduct prejudicial to the administration of justice in *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976) as "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to the public esteem for the judicial office." *Id.* at 305, 226 S.E.2d at 9. As such, rather than evaluate the motives of the judge, a finding of conduct prejudicial to the administration of justice requires an objective review of "the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." *Id.* at 306, 226 S.E.2d at 9 (internal citations and quotations omitted). Respondent's objective conduct in initiating and engaging in inappropriate conversations and relationships with women through FB messages, the exchange of indecent photographs, and his inappropriate comments to women who appeared in his court either in their professional capacities or as parties or witnesses, and the resulting extortion attempt by Ms. [T.] based on his indecent photographs, is without question conduct prejudicial to the administration of justice that brings the judiciary into disrepute.

8. The Supreme Court in *In re Edens* defined willful

misconduct in office as "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present." 290 N.C. at 305, 226 S.E.2d at 9. The undisputed facts at issue in this matter establish that Respondent's conduct involved moral turpitude and dishonesty with the SBI and the Commission during their investigations in an effort to prevent the discovery of the full extent of his sexual misconduct. As such, and despite Respondent's recent diagnosis of the early stages of frontotemporal dementia on the eve of his disciplinary hearing (a fact he noted during his clinical evaluation on October 20, 2020), the Commission does not hesitate to conclude that Respondent's conduct between 2017 and 2019 was willful and renders him unfit to serve as a judge of the State of North Carolina and that Respondent fully understood that his conduct would justify disciplinary action. By Respondent's own admission to the SBI on May 16, 2019, his conduct with respect to Ms. [T.] alone was "terrible" and could result in disciplinary action by the Commission to include a recommendation of removal from office and loss of his pension and that his preference was that the Commission would not learn of his misconduct. . . . The Commission thus concludes that Respondent also engaged in willful misconduct in office.

(Second alteration in original).

¶ 7 In addition to these conclusions of law, the Commission also considered the fact that respondent "is no longer a sitting judge of the State of North Carolina and has agreed that he will never serve in such capacity again," that he "had served for approximately 18 years as a judge, and for over a decade as chief judge of District 29A, without any disciplinary matters before the Commission," that he "had

contributed to improvements to the administration of justice in his district," and that he is in "the early stages of frontotemporal dementia." Based on the conclusions of law and these mitigating factors, the Commission recommended that respondent be censured.

¶ 8    In reviewing recommendations from the Commission, the Supreme Court acts as a court of original jurisdiction rather than as an appellate court. *In re Daisy*, 359 N.C. 622, 623, 614 S.E.2d 529, 530 (2005). Because this Court is not bound by the Commission's recommendations, we must independently determine what, if any, disciplinary measures to impose on respondent. *In re Stephenson*, 354 N.C. 201, 205, 552 S.E.2d 137, 139 (2001). "[I]n reviewing the Commission's recommendations, this Court must first determine if the Commission's findings of fact are adequately supported by clear and convincing evidence, and in turn, whether those findings support its conclusions of law." *In re Badgett*, 362 N.C. 202, 207, 657 S.E.2d 346, 349 (2008). An admission of facts in a stipulation is "binding in every sense, preventing the party who makes it from introducing evidence to dispute it, and relieving the opponent of the necessity of producing evidence to establish the admitted fact." *State v. McWilliams*, 277 N.C. 680, 686, 178 S.E.2d 476, 480 (1971) (quoting Stansbury, *North Carolina Evidence* § 166 (2d ed. 1963)).

¶ 9    After a careful review of the record, we conclude that the Commission's findings of fact are supported by clear and convincing evidence, and we find that the

Commission's conclusions of law are supported by those facts.  Therefore, we adopt the Commission's conclusions of law.  Furthermore, we agree with the Commission's conclusion that respondent's conduct amounts to willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.  *See In re Hair*, 324 N.C. 324, 325, 377 S.E.2d 749, 750 (1989) (concluding that censure was appropriate because the respondent's inappropriate sexual advances and comments were prejudicial to the administration of justice).

In addition, because respondent is no longer a sitting judge and has agreed not to serve as such, while taking into account respondent's eighteen years of distinguished service as a judge and respondent's expression of remorse, we agree that censure is appropriate.  *See id.* at 325, 377 S.E.2d at 750 (concluding censure was appropriate where the respondent was a retired judge and had made no application to sit as an emergency district court judge); *In re Peoples*, 296 N.C. 109, 146, 250 S.E.2d 890, 911 (1978) (stating that jurisdiction for purposes of judicial discipline is not lost upon a judge's resignation).

The Supreme Court of North Carolina orders that respondent, C. Randy Pool, be CENSURED for conduct in violation of Canons 1, 2A, 2B, 3A(4), and 3A(5) of the North Carolina Code of Judicial Conduct, and pursuant to N.C.G.S. § 7A-376(b) for conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

IN RE POOL

2021-NCSC-61

*Order of the Court*


By order of the Court in Conference, this the 11th day of June 2021.


s/Berger, J.
For the Court

WITNESS my hand and the seal of the Supreme Court of North Carolina, this

the 11th day of June 2021.


s/Amy L. Funderburk
AMY L. FUNDERBURK
Clerk of the Supreme Court


Justice ERVIN did not participate in the consideration or decision of this case.