STATE OF NORTH CAROLINA v. KYLE JARON BUNCH

No. 203A09

(Filed 12 March 2010)

**1. Criminal Law— instructions—elements of crime omitted— harmless error review**

The trial court's omission of elements of a crime in its recitation of jury instructions is not structural error but is reviewed under the harmless error test.

**2. Homicide— felony murder—instructions—omissions— harmless error**

Any error in the instructions for felony murder was harmless where the trial court did not give an explicit instruction requiring the jury to find beyond a reasonable doubt that defendant was the killer or that defendant's acts proximately caused the victim's death, but, in the context of the entire charge, the trial court informed jurors of the two elements of felony murder and instructed on the underlying felonies of burglary and robbery with a dangerous weapon, and the evidence was overwhelming that defendant caused the victim's death. There was no reasonable possibility of a different outcome with complete instructions.

Justice EDMUNDS concurring in part and dissenting in part.

Chief Justice PARKER and Justice TIMMONS-GOODMAN joins in this concurring and dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 196 N.C. App. ——, 675 S.E.2d 103 (2009), finding no prejudicial error in a trial that resulted in judgments entered on 20 September 2006 by Judge Clifton W. Everett, Jr. in Superior Court, Pasquotank County. Heard in the Supreme Court 10 September 2009.

*Roy Cooper, Attorney General, by Steven M. Arbogast, Special Deputy Attorney General, for the State.*

*Staples S. Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellant.*

BRADY, Justice.

In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court of the United States applied harmless error analysis to the trial court's instructional omission of elements of a crime. We apply the harmless error standard from *Neder* to defendant's challenge under Article I, Section 24 of the North Carolina Constitution and conclude that the trial court's instructional error in the present case was harmless beyond a reasonable doubt. We therefore affirm the decision of the Court of Appeals.

The State's evidence at trial tended to show that on the afternoon of 1 March 2004, defendant, along with Markie Riddick, Torando Simpson, Robert Hall, and Carl Scales, II met at the apartment of Crystal Wyatt in Elizabeth City, North Carolina. During the meeting, Hall devised a plan for the group to commit a robbery. All five men then dressed in dark clothing and masks that Hall created from a cut-up black T-shirt. After changing clothes, defendant and Scales drove to Scales's mobile home to retrieve a shotgun belonging to Scales's cousin, Julius Miller. Shortly thereafter, the five men met in the vicinity of the Robinson Funeral Home and traveled in Scales's Cadillac to the victims' Elizabeth City neighborhood. While the men drove around the block to familiarize themselves with the area, Hall pointed to the target residence, 1322 South Williams Circle. After parking the vehicle one street over from the target residence, Scales opened the trunk, and defendant retrieved the shotgun. Scales gave defendant two shotgun shells. Simpson exited the vehicle and approached the back of the house with a nine-millimeter Ruger handgun that Hall had provided him. All five men initially walked to the rear of the residence, but Scales and Hall left shortly thereafter.

James Arthur Bowen, Richard Preston Hewlin, Jr., and the murder victim Brian Jarrod Pender lived at 1322 South Williams Circle. Between 9:30 p.m. and 10:00 p.m., Hewlin walked outside to his vehicle. Upon Hewlin's return to the house, Simpson emerged from the corner of the garage and pressed a pistol into Hewlin's chest. Simpson shoved Hewlin into the house. After ordering Bowen to sit on a couch and Pender to lie down on the floor, Simpson walked Hewlin into the hallway.

Thereafter, Riddick, followed by defendant, entered the house. Both of the surviving victims testified that the third perpetrator, which additional testimony revealed to be defendant, entered the residence wielding a shotgun and then stood over or knelt on

**STATE v. BUNCH**

[363 N.C. 841 (2010)]

Pender with the shotgun's barrel pointed at the back of Pender's head. Simpson then ordered Riddick and defendant to collect the victims' cell phones. The three perpetrators also searched through the pockets of all three victims and stole approximately sixty-five dollars. After Simpson stated, "[T]hat's all we are going to get," Bowen saw defendant "rack" the shotgun. Immediately thereafter the shotgun fired. Defendant then left the residence with the other two perpetrators.

On 29 March 2004, defendant was indicted for first-degree murder and robbery with a dangerous weapon arising from a home invasion. Defendant was tried capitally at the 11 September 2006 criminal session of Superior Court, Pasquotank County. At trial, the trial court instructed on felony murder as follows: "[T]he State must prove three [3] things beyond a reasonable doubt. First, that the Defendant or someone with whom he was acting in concert committed first degree burglary and/or robbery with a dangerous weapon." (Second set of brackets in original.) The remaining two elements of felony murder—killing of the victim during commission of a felony and defendant's act was a proximate cause of the victim's death—were only explained at length during the trial court's instructions on premeditated murder.

On 18 September 2006, a jury found defendant guilty of first-degree murder under the felony murder rule and robbery with a dangerous weapon. Based on the jury's binding recommendation, the trial court sentenced defendant to life imprisonment without parole. The trial court also sentenced defendant to a consecutive term of 103 to 133 months for the robbery with a dangerous weapon conviction.

On appeal, defendant argued that the trial court's failure to properly instruct the jury on felony murder violated his right to a trial by jury under Article I, Section 24 of the North Carolina Constitution. Applying harmless error analysis, the Court of Appeals found no prejudicial error in defendant's conviction and sentence. *State v. Bunch,* —— N.C. App. ——, 675 S.E.2d 103 (2009). The Court of Appeals concluded the challenged instructions were harmless beyond a reasonable doubt because the trial court adequately instructed the jury on felony murder when the charge was considered in its entirety. *Id.* at ——, 675 S.E.2d at 107-08. A dissenting judge opined that instructional errors of this nature should be reversible per se and not amenable to harmless error analysis. *Id.* at ——, 675 S.E.2d at 108 (Elmore, J., dissenting).

**STATE v. BUNCH**

[363 N.C. 841 (2010)]

Defendant appeals to this Court and raises two issues for our review based on the dissenting opinion in the Court of Appeals. First, defendant argues that we should apply structural error analysis and treat the omission of elements of a crime from jury instructions as reversible per se. Second, even if harmless error analysis is applied, defendant argues that the instructional errors were not harmless beyond a reasonable doubt.

**[1]** Defendant first argues that the omission of elements of a crime from jury instructions constitutes per se or structural error. The North Carolina Constitution states that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. I, § 24. Though a defendant's right to be tried by a "jury of twelve" cannot be waived, *see State v. Ashe*, 314 N.C. 28, 35, 331 S.E.2d 652, 657 (1985) (stating Court's agreement with the defendant's argument that " 'having the right to a trial by a jury of twelve, [defendant] has the right to have all twelve jurors instructed consistently' "), harmless error analysis may still be applicable to Article I, Section 24 errors. *See, e.g., State v. Wilson*, 363 N.C. 478, 487, 681 S.E.2d 325, 331 (2009) ("Where the error violates a defendant's right to a unanimous jury verdict under Article I, Section 24, we review the record for harmless error." (citations omitted)); *State v. Nelson*, 341 N.C. 695, 700-01, 462 S.E.2d 225, 227-28, (1995) (holding that although failure to require the presence of all jurors when requesting exhibits violates Article I, Section 24, the error was harmless error).

"In construing a provision of the state Constitution, we find highly persuasive the meaning given and the approach used by the United States Supreme Court in construing a similar provision of the federal Constitution." *State v. Huff*, 325 N.C. 1, 33, 381 S.E.2d 635, 653 (1989) (citation omitted), *sentence vacated on other grounds*, 497 U.S. 1021 (1990). In *Neder* the Supreme Court of the United States held that the trial court's unconstitutional failure to submit an essential element of the crime to the jury was subject to harmless error analysis. 527 U.S. at 4. Although the omission of the element from the jury instructions impermissibly "infringe[d] upon the jury's fact-finding role" in violation of the Sixth Amendment's jury trial guarantee, *id.* at 18, the Court held that the error was not a structural error that "*necessarily* render[ed] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id.* at 9. Accordingly, the Court reviewed the Sixth Amendment violation in *Neder* for harmlessness and concluded "that the omitted

**STATE v. BUNCH**

[363 N.C. 841 (2010)]

element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id.* at 17. Thus, the constitutional error was "properly found to be harmless." *Id.*

Considering the importance of "safeguarding the jury guarantee," the Supreme Court of the United States requires "a reviewing court [to] conduct a thorough examination of the record" before finding the omission harmless. 527 U.S. at 19. "If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant [1] contested the omitted element and [2] raised evidence sufficient to support a contrary finding—it should not find the error harmless." *Id.* Thus, the harmless error analysis under *Neder* is twofold: (1) if the element is uncontested and supported by overwhelming evidence, then the error is harmless, but (2) if the element is contested and the party seeking retrial has raised sufficient evidence to support a contrary finding, the error is not harmless. *See, e.g., United States v. Brown*, 202 F.3d 691, 702 (4th Cir. 2000) (holding erroneous instruction not harmless when evidence of predicate offenses was contested and "there was a basis in the record for the jury to have rationally disbelieved the testimony of any of the Government's witnesses").

This Court has previously applied harmless error analysis to constitutional errors arising under Article I, Section 24. In *Wilson*, this Court stated that "[w]here the error violates a defendant's right to a unanimous jury verdict under Article I, Section 24, we review the record for harmless error." 363 N.C. at 487, 681 S.E.2d at 331 (citing, *inter alia, Nelson*, 341 N.C. at 700-01, 462 S.E.2d at 227-28). Additionally, we have applied harmless error review to violations of nonwaivable rights under the North Carolina Constitution. *See, e.g., Huff*, 325 N.C. at 33-34, 381 S.E.2d at 653-54 (applying harmless error review to alleged violations of defendant's nonwaivable right to be present at all stages of his capital trial). Guided by this federal and state precedent, we hold that the trial court's omission of elements of a crime in its recitation of jury instructions is reviewed under the harmless error test.

**[2]** We now apply harmless error analysis to the circumstances of the present case. On a general level, "[a]n error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction." *Nelson*, 341 N.C. at 701, 462 S.E.2d at 228. "[T]he presence of overwhelming evidence of guilt may render error of constitutional dimen-

sion harmless beyond a reasonable doubt." *State v. Autry,* 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988) (citing *State v. Brown,* 306 N.C. 151, 293 S.E.2d 569, *cert. denied,* 459 U.S. 1080 (1982)).

In its charge to the jury, the trial court only recited the first portion of the part of the North Carolina Pattern Jury Instruction that explains what the State must prove beyond a reasonable doubt to obtain a conviction of felony murder.[1] Defendant ardently stresses that the trial court failed to utilize the pattern instructions; however, "[u]se of the pattern instructions is encouraged, but is not required." *State v. Garcell,* 363 N.C. 10, 49, 678 S.E.2d 618, 642-43 (citation omitted), cert. denied, —— U.S. ——, 130 S. Ct. 510, 175 L. Ed. 2d 362 (2009). Failure to follow the pattern instructions does not automatically result in error. "In giving instructions the court is not required to follow any particular form," as long as the instruction adequately explains each essential element of an offense. *State v. Avery,* 315 N.C. 1, 31, 337 S.E.2d 786, 803 (1985) (citation and quotation marks omitted).

This Court has repeatedly stated that felony murder is composed of two elements. Felony murder is defined by statute in N.C.G.S. § 14-17,[2] and this Court has confined the offense to "only two elements: (1) the defendant knowingly committed or attempted to commit one of the felonies indicated in N.C.G.S. § 14-7, and (2) a related killing." *State v. Thomas,* 325 N.C. 583, 603, 386 S.E.2d 555, 567 (1989) (citations omitted). Similarly, in *State v. Richardson,* this Court explained that "the elements necessary to prove felony murder are that [1] the killing took place [2] while the accused was perpetrating or attempting to perpetrate one of the enumerated

---

1. The pertinent part of the pattern instructions states that "the State must prove [three] . . . things beyond a reasonable doubt:

"First, that the defendant [committed] (or) [attempted to commit] (name felony, e.g., robbery). (Define the felony and enumerate its elements, using the Pattern Jury Instruction for that felony.)

"Second, that while [committing] (or) [attempting to commit] (name felony), the defendant killed the victim with a deadly weapon.

"[And Third] . . ., that the defendant's act was a proximate cause of the victim's death. A proximate cause is a real cause, a cause without which the victim's death would not have occurred."

1 N.C.P.I. Crim. 206.14 (Apr. 2003) (brackets in original) (italics omitted).

2. "A murder . . . which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree . . . ." N.C.G.S. § 14-17 (2007).

felonies [in N.C.G.S. § 14-17]." 341 N.C. 658, 666, 462 S.E.2d 492, 498 (1995). Finally, this Court described felony murder in *State v. Jones* as follows: "[1] When a killing is committed [2] in the perpetration of an enumerated felony (arson, rape, etc.) or other felony committed with the use of a deadly weapon, murder in the first degree is established . . . ." 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000) (citations omitted). Moreover, in *State v. Collins*, this Court commented that "causation . . . must be established in order to sustain a conviction for any form of homicide, either murder or manslaughter." 334 N.C. 54, 57, 431 S.E.2d 188, 190 (1993); *id.* at 60-61, 431 S.E.2d at 192.

Here, upon explaining the verdict sheets during the jury charge, the trial court instructed the jury: "You may find the Defendant, Mr. Bunch, guilty of first degree murder . . . . under the first degree felony murder rule." Shortly thereafter, the trial court defined the offense, stating: "First degree murder under the first degree felony murder rule *is* [1] *the killing* of a human being [2] *in the perpetration* in this case of first degree burglary and/or robbery with a dangerous weapon." (Emphases added.) This instruction mirrors the definition stated by this Court for felony murder found in the *Thomas*, *Richardson*, and *Jones* opinions cited above.

Then, as reflected several pages later in the transcript, the trial court informed the jury that "the State must prove three [3] things beyond a reasonable doubt" to find defendant guilty of first-degree felony murder. (Brackets in original.) At this point, the trial court appears to have begun a modified recitation of the pattern instructions, stating: "First, that the Defendant or someone with whom he was acting in concert committed first degree burglary and/or robbery with a dangerous weapon." Next, as the pattern instructions recommend, the trial court explained the elements of first-degree burglary and then robbery with a dangerous weapon. After the instructions on burglary and robbery, the trial court inexplicably did not return to the "Second" or "Third" paragraphs of the pattern instructions. Consequently, the trial court failed to instruct that while committing burglary or robbery "the defendant killed the victim with a deadly weapon" and that "defendant's act was a proximate cause of the victim's death." 1 N.C.P.I. Crim. 206.14.

Construing the instructions within the context of the entire jury charge, *see, e.g., State v. Hartman*, 344 N.C. 445, 467, 476 S.E.2d 328, 340 (1996), *cert. denied*, 520 U.S. 1201 (1997), the trial court informed jurors of two elements of felony murder and instructed them on the

underlying felonies of burglary and robbery with a dangerous weapon. Thus, defendant's argument rests on the fact that the trial court did not explicitly include a reference to the effect that defendant was the killer, or that defendant's acts were the proximate cause of the victim's death. The foundation on which defendant bases this argument is superficial in light of the overwhelming evidence that defendant caused the victim's death. Thus, even if the trial court's instructions were erroneous, any error is harmless.

A review of the record and transcripts reveals the strength of the State's case. For instance, the State's evidence included testimony from Bowen and Hewlin, the two surviving victims in the residence on the night of 1 March 2004. Both of them testified that the third person to enter the residence that evening wielded a shotgun and then stood over or knelt over Pender, who was lying facedown on the floor. Bowen testified to actually seeing the perpetrator "rack" the shotgun back, after which "B.J.'s eyes got big and then boom," and blood "c[a]me from all out of his head and face and everything and it formed like a big pool." Hewlin heard the shotgun discharge and immediately looked to see the shotgun kick out of the perpetrator's grasp, while blood from the victim went everywhere. The shooter then picked up the weapon and left with the other two men. Neither Bowen nor Hewlin saw the face of the person with the shotgun because he was wearing a mask, but both testified that the individual was the tallest of the three perpetrators.

Next, the jury heard from codefendants Simpson and Riddick, who admitted to being the other two perpetrators in the residence that night. Both identified defendant as the third person in the residence who stood over Pender and was holding the shotgun when it discharged. They also confirmed that defendant was taller than either of them, at least six feet, two inches tall. Their testimony regarding defendant's height connected defendant with the testimony of victims Bowen and Hewlin, who stated that the man with the shotgun was the tallest of the three. Additionally, Carl Scales, another codefendant who had remained in a vehicle nearby the victim's residence, confirmed defendant's participation in the crimes and testified that defendant possessed the shotgun that evening. Finally, Scales and another witness testified to hearing defendant state on several occasions that he "didn't mean to do it" and that he "didn't mean to shoot" the victim.

In the face of this overwhelming evidence of defendant's involvement in the crimes, defendant's attempts to cast doubt on the State's

STATE v. BUNCH

[363 N.C. 841 (2010)]

evidence were insubstantial at best. Defendant attempted to challenge the witnesses' identification of the shooter by noting that Julius Miller, Scales's cousin, owned the shotgun that killed Pender. Like defendant, Julius Miller was described as taller than the other two codefendants who entered the house. However, no witness identified Julius Miller or anyone other than those charged as a participant in the robbery. Defendant also elicited testimony that the victims at one point suggested to law enforcement that the shooter had dreadlocks. However, the State offered evidence that the mask worn by the shooter could resemble dreadlocks, and a codefendant testified that Julius Miller did not have dreadlocks. Defendant also attempted to present an alibi defense through the testimony of his stepmother. She testified that defendant arrived at her residence between 10:15-10:30 p.m. on the night of the murder and that she remembers this because a commercial was on television while defendant was there. However, she could not name the show she was watching or remember what commercial was playing when defendant was in her house. In summary, defendant failed not only to controvert the State's evidence with credible evidence of his own, but he failed to present some viable alternative explanation for the crimes.

Therefore, even if the jurors had received the complete pattern instruction for felony murder, there is no reasonable probability that outcome would have been different. To whatever extent the trial court failed to adequately inform the jury and explain all the elements of felony murder, the overwhelming evidence forestalls any notion that this omission contributed to defendant's conviction. Accordingly, we hold that any potential error was harmless beyond a reasonable doubt, and the Court of Appeals decision is affirmed.

AFFIRMED.

Justice EDMUNDS concurring in part and dissenting in part.

I agree with the majority that the errors here were not structural. Nevertheless, I believe that the instructions on felony murder were prejudicially erroneous and accordingly, I respectfully dissent.

These errors pervaded the instructions given to the jury. After counsel completed their closing arguments, the trial court began its instructions relating to first-degree murder with a brief introductory description of the offense:

STATE v. BUNCH

[363 N.C. 841 (2010)]

Now as to the charge of first degree murder under the law in the evidence in this case, it is your duty to return one of the following verdicts: guilty of first degree murder or guilty of second degree murder or not guilty.

You may find the Defendant, Mr. Bunch, guilty of first degree murder or [sic] either or both of two theories. Either or both of two theories. That is on the basis of malice, premeditation, and deliberation, or under the first degree felony murder rule.

First degree murder on the basis of malice, premeditation, and deliberation is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. First degree murder under the felony murder rule is the killing of a human being in the perpetration in this case of first degree burglary and/or robbery with a dangerous weapon.

Following these and other preliminary remarks, the trial court provided a detailed instruction explaining the elements of first-degree murder based upon premeditation and deliberation. However, when the trial court undertook to provide a similarly detailed explanation of the elements of felony murder, it began by instructing the jury: "Now I further charge that for you to find the Defendant guilty of first degree murder under the first degree felony murder rule, the State must prove three things beyond a reasonable doubt." Having alerted the jurors to be on the lookout for three elements, the court defined only the first, that the killing was in the perpetration of an underlying felony. The court repeated this error in its mandate as to first-degree murder when it again defined only the element of felony murder relating to the commission of an underlying felony, omitting the rest. In addition, during another part of the instructions, the trial court apparently referred to the felony-murder rule as the "first degree murder rule."

Finally, in its concluding instructions as to murder, the trial court advised the jury:

Now, if you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant or someone with whom he was acting in concert intentionally and with malice wounded the victim with a deadly weapon and that this proximately caused the victim's death, it would be your duty to return a verdict of guilty of second degree murder.

**STATE v. BUNCH**

[363 N.C. 841 (2010)]

If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty. And I believe I said that—and I will go back and repeat it. As to the felony murder—first degree murder on the basis of a felony murder rule if you don't find that they committed those—either one of those two crimes one or the other or both neither—neither one and/or—and/or first-degree burglary or robbery with a dangerous weapon and if you don't find that, then he would not be guilty of first degree murder based on the felony murder rule.

The mistakes and omissions in these instructions, and the inevitable resulting perplexity, would seem to be self-evident. The majority purports to consider the entire jury charge and the strength of the evidence to find the error harmless. However, as the preceding analysis indicates, the instructions in their entirety are, at best, confusing. This Court has found no error when an isolated piece of a jury instruction was incorrect or improper but the instruction taken as a whole was an accurate statement of the law. *State v. McWilliams*, 277 N.C. 680, 684-85, 178 S.E.2d 476, 479 (1971). In contrast, here, one isolated sentence in the introductory instructions was an accurate statement of the law but the instructions as a whole were incomplete and muddled.

We have held that the trial court must instruct on all the elements of a criminal offense. *State v. Ramos*, 363 N.C. 352, 355-56, 678 S.E.2d 224, 226-27 (2009) (prejudicial error when trial court failed to instruct on element of willfulness when the defendant's evidence conflicted with the State's evidence on that issue). The purposes of jury instructions are to provide guidance for the jury and to " 'give a clear instruction which applies the law to the evidence in such manner as to assist the jury in understanding the case and in reaching a correct verdict.' " *State v. Smith*, 360 N.C. 341, 346, 626 S.E.2d 258, 261 (2006) (quoting *State v. Williams*, 280 N.C. 132, 136, 184 S.E.2d 875, 877 (1971)). Thus, the trial court has "the obligation 'to instruct the jury on every substantive feature of the case.' " *Id.* at 347, 626 S.E.2d at 261 (quoting *State v. Mitchell*, 48 N.C. App. 680, 682, 270 S.E.2d 117, 118 (1980)). The guidance that our trial judges must provide juries of laypersons, unversed in the law but required to apply the law to the case at hand, was absent here. As a result, the jury had an insufficient basis for reaching a rational decision.

**STATE v. BUNCH**

[363 N.C. 841 (2010)]

The strength of the evidence is the other leg on which the majority opinion stands. While the evidence here is indeed compelling, when erroneous and incomplete instructions have left an unguided, unchecked, and aroused jury to its own devices, mere strength of evidence provides an inadequate basis for a reliable verdict. If it did, we could dispense with the formality of trials. Accordingly, I respectfully dissent.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this concurring and dissenting opinion.