IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-994

Filed 01 August 2023

Buncombe County, Nos. 19CRS080481, 20CRS091146 & 21CRS000101

STATE OF NORTH CAROLINA

v.

RONALD EUGENE PATTON, Defendant.

Appeal by Defendant from judgments entered 13 November 2021 by Judge Karen Eady-Williams in Buncombe County Superior Court. Heard in the Court of Appeals 9 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Stephanie A. Brennan, for the State.*

*W. Michael Spivey for Defendant-Appellant.*

RIGGS, Judge.

Defendant Ronald Eugene Patton appeals from several judgments entered after a jury found him guilty of second-degree forcible sexual offense, intimidating or interfering with a witness, and attaining habitual felon status. On appeal, Mr. Patton contends that the trial court: (1) lacked jurisdiction over the interfering with a witness charge because the criminal conduct alleged in the indictment—bribery— is not encompassed in the relevant statute, N.C. Gen. Stat. § 14-226 (2021); (2) erred in denying his motion to dismiss that same charge for insufficient evidence of the

requisite criminal intent; and (3) prejudicially or plainly erred in its jury instruction on witness interference. After careful review, we hold that: (1) bribery of a witness is criminalized by N.C. Gen. Stat. § 14-226 such that the trial court had jurisdiction over the charged offense; (2) the trial court properly denied Mr. Patton's motion to dismiss that charge; and (3) Mr. Patton's alleged jury instruction arguments are without merit.

## I.   FACTUAL AND PROCEDURAL HISTORY

J.L.A. ("Jane") moved to Asheville, North Carolina from Ohio in February 2017. One day when she was waiting for the bus to take her to work, Mr. Patton approached her and offered her some marijuana. Jane declined and boarded the bus without further conversation with Mr. Patton. Later, Jane again ran into Mr. Patton at the bus station as she was heading home; this time, Jane took down Mr. Patton's number in case she ever wanted to buy marijuana from him.

Jane waited to contact Mr. Patton for some time, but she did eventually text message him to ask about buying marijuana. Mr. Patton obliged Jane's request and began selling marijuana to her. The two struck up a friendship, with Jane calling Mr. Patton "grandpa" because he was twice her age. After several drug transactions, Mr. Patton told Jane that he would give her $40 worth of marijuana in exchange for sex; Jane responded by cursing at him and threatening to cut off contact.

Jane ceased talking to Mr. Patton after the above exchange. She resumed contact with him out of desperation, and Mr. Patton gave her furniture and clothing

and helped her buy a car. He also continued to supply her with marijuana and make sexual comments to her, though Jane never reciprocated with any showing of romantic or sexual interest.

On the night of 10 January 2019, Mr. Patton and Jane were together at her house drinking wine, smoking marijuana, and watching movies. Mr. Patton ended up staying over at Jane's house, as he had arrived after the buses had ceased running for the evening. Jane eventually fell asleep on the floor while Mr. Patton continued to watch TV on her couch. She later awoke to Mr. Patton grinding his groin against her backside through her blanket and leggings. Jane told Mr. Patton to stop and get off her, but he instead held her down, shoved her head into a pillow, and continued to thrust against her while groping her body. Jane fought back against Mr. Patton, punching and scratching him in the face. After getting free and heading for the front door to escape, Jane was grabbed from behind by her hair and dragged into the bedroom by Mr. Patton.

Once in the bedroom, Mr. Patton released Jane to let her go to the bathroom; as soon as she was finished, he grabbed her by the hair again. Mr. Patton then told Jane to fellate him and that he would strip her and tie her up if she refused. Jane refused and lied to him about having HIV in the hopes that he would not rape her; Mr. Patton instead continued to try and force his penis into her mouth. He then pushed her back onto the bed and tried to smother her with a pillow. When Jane continued to struggle, Mr. Patton wrapped a cell phone charger cord around her neck

to choke her. Mr. Patton eventually forced his penis into Jane's mouth and ejaculated, causing her to vomit.

Mr. Patton released Jane, and she immediately went to the bathroom to continue vomiting. When she returned to the bedroom, Mr. Patton held her by her wrist and walked her through the house as he collected his belongings. He then left the house and got into a car that was waiting for him outside, whereupon Jane called the police to report the assault. Law enforcement responded to the call, interviewed Jane, photographed the scene, and collected physical evidence corroborating Jane's account. Jane went to the hospital with a police officer, where DNA evidence was collected from Jane's hair, fingernails, nose, and cheek.

On 4 February 2019, Mr. Patton was indicted for one count each of first-degree forcible sex offense, first-degree kidnapping, and assault by strangulation. After Mr. Patton's arrest and while he was in jail, Jane received a call from an inmate, purportedly named "Richie," at the Buncombe County Jail. When Jane answered the call and asked who was calling, Mr. Patton identified himself and the following conversation ensued:

> MR. PATTON: This is Gene.
>
> JANE: Why are you calling me?
>
> MR. PATTON: If you're still in Asheville I'm gonna try and send you some money.
>
> JANE: This is who?

> MR. PATTON: This is Gene.
>
> JANE: Why are you calling me? You're not supposed to be talking to me.
>
> MR. PATTON: I got $1,000 for ya.

Jane immediately hung up the phone; her tone of voice during the conversation clearly conveyed a sense of distress. Mr. Patton called Jane again, but she did not answer because she had blocked the number. Jane informed law enforcement of the call and, on 1 March 2021, Mr. Patton was indicted with intimidating or interfering with a witness in violation of N.C. Gen. Stat. § 14-226.

The State obtained a superseding indictment for forcible sexual offense and an additional indictment for attaining habitual felon status ahead of trial. At trial, Jane testified consistent with the above recitation of the facts, and the jailhouse phone call was published to the jury. Jane testified that, after receiving the call, "I was shocked, because, like, you're not supposed to be contacting me. . . . I felt like he was trying to bribe me trying to get out of what he done to me, like, no."

Mr. Patton's counsel moved to dismiss the charges against him at the close of the State's case-in-chief and at the close of all evidence; the trial court denied both motions. The trial court then held the charge conference, during which the parties discussed the appropriate instruction for the charge of interfering with a witness. That conversation included the following objection from Mr. Patton's counsel concerning reference to the specific act of offering Jane $1,000 in the trial court's

proposed instruction:

> [T]hat instruction . . . that Your Honor is laying out . . . is not, you know, a crime. He said he had a thousand dollars. I think that ought to read probably bribery based on the way their indictment reads.
>
> . . . .
>
> I think bribery based on their indictment is what needs to be in there, by bribing her.
>
> . . . .
>
> Because, you know, my contention is that . . . a thousand dollars is not bribery. You know, maybe he was getting close to it, but I think that would be the question they decide is him stating that he has a thousand dollars, is that in fact bribery. So it should just read bribery.

After a lengthy back-and-forth with the parties, the trial court resolved to instruct the jury disjunctively, "so if they considered calling [Jane] before his trial and stating that he had a thousand dollars for her that would be the substitute for bribery. They could look at it as bribery or the calling her." The final instruction was given as follows:

> For you to find the defendant guilty of this offense the [S]tate must prove four things beyond a reasonable doubt.
>
> First, that a person was summoned as a witness in a court of this state.
>
> Second, that the defendant attempted to deter any person who was summoned as a witness in the defendant's case.
>
> Third, that the defendant acted intentionally.
>
> And fourth, that the defendant did so by bribery or by

- 6 -

> calling the victim before his trial and stating he had $1,000 for her.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the person was acting as a witness in the defendant's case in a court of this state, and that the defendant . . . intentionally attempted to deter by bribery or by calling the victim before his trial and stating he had $1,000 for her, it would be your duty to return a verdict of guilty.

After deliberations, the jury returned guilty verdicts on second-degree forcible sexual offense, intimidating or interfering with a witness, and attaining habitual felon status, but acquitting Mr. Patton of assault by strangulation. The trial court sentenced Mr. Patton to consecutive sentences of 146 to 188 and 146 to 236 months' imprisonment. Mr. Patton gave oral notice of appeal at the conclusion of sentencing.

## II.   ANALYSIS

Mr. Patton's appeal asserts the existence of several errors in connection with the interfering with a witness conviction. First, he contends that the trial court lacked jurisdiction because the conduct alleged in the indictment—attempted bribery with $1,000—does not fall within his preferred interpretation of the statute defining the offense. Second, he argues that the trial court erred in denying his motion to dismiss based on inadequate evidence of intent to deter Jane from testifying. Third, he asserts plain error in the trial court's failure to instruct on the allegedly necessary element of threatened harm, prejudicial error in failure to instruct on the intent to deter Jane *from testifying* specifically, prejudicial error in its disjunctive instruction

regarding attempted bribery or payment of $1,000, and constitutional error on the basis that the disjunctive instruction violated his right to a unanimous jury verdict. We address each argument in turn, ultimately holding that Mr. Patton received a trial free from error.

## A. Bribery and N.C. Gen. Stat. § 14-226

In his first argument, Mr. Patton contends that attempted bribery of a witness does not fall within the conduct criminalized by N.C. Gen. Stat. § 14-226(a). That statute provides:

> If any person shall by threats, menaces or in any other manner intimidate or attempt to intimidate any person who is summoned or acting as a witness in any of the courts of this State, or prevent or deter, or attempt to prevent or deter any person summoned or acting as such witness from attendance upon such court, the person shall be guilty of a Class G felony.

N.C. Gen. Stat. § 14-226(a).

Mr. Patton argues that a defendant can only violate the statute in two ways:

> (1) by intentionally threatening or menacing a witness to intimidate or attempt to intimidate the witness, *or*;

> (2) by intentionally threatening, or menacing a witness to deter, or attempt to prevent or deter the witness from attending court.

Under this reading, bribing a witness does not fall within the statute because it is not a threat designed to intimidate a witness or deter her from testifying. But, as rightly argued by the State and explained *infra*, Mr. Patton's interpretation fails because it:

(1) is contrary to the plain language and intent of the statute; and (2) results in a reading that renders one of its provisions redundant.

### 1. *Standard of Review*

Whether an indictment is facially valid—and thus sufficient to confer subject matter jurisdiction on the trial court—is reviewed *de novo*. *State v. Stephenson*, 267 N.C. App. 475, 478, 833 S.E.2d 393, 397 (2019). This same *de novo* standard applies to the interpretation of criminal statutes. *Id.* at 478-79, 833 S.E.2d at 397.

### 2. *N.C. Gen. Stat. § 12-226 Criminalizes Bribery of a Witness*

The pertinent indictment alleged that Mr. Patton "unlawfully, willfully and feloniously . . . did by bribery, attempt to deter [Jane] from attending court by offering her $1,000.00," in violation of N.C. Gen. Stat. § 14-226. Mr. Patton now argues that this conduct did not fall within the statute by putting forth an interpretation that criminalizes two types of conduct: "'intimidation' of a witness in general . . . [and] intimidation for the specific purpose of deterring a witness from attending court." This reading is unsupported by the plain language of the statute and contravenes a key canon of statutory construction.

The relevant statutory provision prohibits intimidation of witnesses or attempts to deter or interfere with their testimony "by threats, menaces *or in any other manner*." N.C. Gen. Stat. § 14-226(a) (emphasis added). The emphasized language, given its plain and ordinary meaning, straightforwardly expands the scope of prohibited conduct beyond "threats" and "menaces" to include *any other* act that

intimidates a witness or attempts to deter or interfere with their testimony. Contrary to Mr. Patton's assertion, there is no ambiguity that arises from this phrasing, and we need not rely on any canons of statutory construction to discern the legislative will. *See, e.g., Swauger v. Univ. of N.C. at Charlotte*, 259 N.C. App. 727, 817 S.E.2d 434 (2018) ("Where there is no ambiguity, this Court does not employ the canons of statutory interpretation, and instead gives the words their plain and definite meaning." (cleaned up)). *See also State v. Ross*, 272 N.C. 67, 71, 157 S.E.2d 712, 714-15 (1967) (noting that the canon of *ejusdem generis* applies only where a statute is ambiguous, and holding that the legislature's use of "any guardian, administrator, executor, trustee, or any receiver, or *any other fiduciary*" in an embezzlement statute showed a "manifest purpose . . . [t]o enlarge the scope of the embezzlement statute," as "[t]he words, 'or any other fiduciary', show clearly that the General Assembly did not intend to restrict the application of the [statute] to receivers.").

This reading is fully in accord with the intent of the statute, as "[t]he gist of this offense is the obstruction of justice." *State v. Neely*, 4 N.C. App. 475, 476 166 S.E.2d 878, 879 (1969).[1] As we have since observed, "*Neely* . . . considers 'attempting

---

[1] To be clear, and as correctly argued by both Mr. Patton and the State in their briefs, the statute is not co-extensive with the common law offense of obstruction of justice. For example, destroying evidence is an obstruction of justice that does not fall within the scope of the statute. *See, e.g., Jones v. City of Durham*, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007) (holding allegations of destruction of videotape evidence from a police dashboard camera sufficed to allege the common law offense of obstruction of justice). But this statute, as with other related statutes, criminalizes a specific subset of acts that would otherwise fall within the larger common law crime. *See, e.g.,* N.C. Gen. Stat. § 14-225.2 (2021) (criminalizing harassment of a juror). Our holding that bribery constitutes an illegal

to intimidate' a witness, 'attempting to threaten' a witness, and 'attempting to prevent a witness from testifying' as undistinguished parts of a single offense under N.C. Gen. Stat. § 14-226." *State v. Clagon*, 279 N.C. App. 425, 434, 865 S.E.2d 343, 349 (2021) (cleaned up) (citing *Neely*, 4 N.C. App. at 476, 166 S.E.2d at 879).

Even were the statute ambiguous, Mr. Patton's reading renders the second category of criminalized conduct redundant in violation of our statutory construction canons. *See State v. Morgan*, 372 N.C. 609, 614, 831 S.E.2d 254, 258 (2019) ("We are further guided in our decision by the canon of statutory construction that a statute may not be interpreted in a manner which would render any of its words superfluous. . . . [A] statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant." (cleaned up)). Per Mr. Patton's Reply Brief, "one section of the statute addresses 'intimidation' of a witness in general while the second addresses intimidation for the specific purpose of deterring a witness from attending court." But the former crime, under Mr. Patton's own formulation, necessarily encompasses the latter, with both subject to the same felony offense classification. Mr. Patton's reading thus renders half of the statute surplusage; by way of a hypothetical, it would be entirely redundant to read a statutory provision as separately criminalizing both "striking a dog" and "striking a Dalmatian" as Class B felonies. Because Mr. Patton's preferred reading is both

---

act under the relevant statute does not expand the statute to entirely encompass the broader crime of obstruction of justice.

contrary to the statute's plain language and renders one of the statute's provisions into surplusage, we hold that the indictment alleging Mr. Patton's attempted bribery of Jane in violation of N.C. Gen. Stat. § 14-226 was sufficient to vest the trial court with subject matter jurisdiction.

## B. Motion to Dismiss

As an alternative to his first argument, Mr. Patton argues that the trial court erred in denying his motion to dismiss the interfering with a witness charge because the State failed to offer sufficient evidence of bribery with the specific intent to deter Jane from testifying. But, contrary to Mr. Patton's argument, the record contains sufficient circumstantial evidence from which a jury could reasonably infer that Mr. Patton intended to dissuade Jane from acting as a witness. We therefore hold that the trial court properly denied Mr. Patton's motion.

### 1. Standard of Review

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Teague*, 216 N.C. App. 100, 105, 715 S.E.2d 919, 923 (2011) (cleaned up).

## 2. *Evidence of Intent*

Intent is seldom provable by direct evidence; as such, circumstantial evidence is commonly—if not necessarily—relied upon to prove state of mind. *State v. Gammons*, 260 N.C. 753, 756, 133 S.E.2d 649, 651 (1963). Thus, the State was not required to introduce evidence of Mr. Patton explicitly offering Jane $1,000 for the express purpose of dissuading her from testifying. And the circumstantial evidence that the State did introduce in this case supports a reasonable inference that Mr. Patton acted with just that intent given the context in which he made the offer. *See, e.g., State v. Taylor*, 379 N.C. 589, 609, 866 S.E.2d 740, 756 (2021) (noting on review of a true threats conviction that, in discerning the defendant's subjective intent in the light most favorable to the State, "[d]efendant's statements should not be read in isolation and are more properly considered in context.").

The context of Mr. Patton's offer is of paramount importance—one can reasonably infer that a motorist who knowingly slips a State Trooper a $100 bill with his license and registration during a traffic stop for speeding is attempting to bribe the officer notwithstanding the lack of an express statement of such intent. Similarly, Mr. Patton's call to his known accuser with an unsolicited offer of $1,000, prior to trial and for no other discernable reason, is inherently suspect.

Other evidence solidifies the reasonable inference of intent to interfere, namely: (1) his attempt to disguise his identity in calling Jane by using another inmate's telephone account, suggesting an improper motive; (2) his offer of $1,000

immediately after Jane said "you're not supposed to be talking to me," showing that the offer was made with full awareness that he was not to be in contact with Jane and in direct contravention of those concerns; (3) Jane plainly sounds distressed on the recoding once Mr. Patton identified himself, yet he continued to go forward with his offer despite her obvious discomfort; (4) a second attempt to contact Jane after she hung up on him, again demonstrating his disregard for prohibitions against contacting Jane and the distress under which it placed her; (5) Mr. Patton's admitted past conduct of threatening and intimidating Jane in order to influence her behavior for his benefit; and, (6) Jane's own understanding of the conversation, derived from her shared and involved history with Mr. Patton, that the offer was intended as a bribe to prevent her from testifying.[2]

All of this evidence, coupled with a lack of other evidence indicating why Mr. Patton would gratuitously, surreptitiously, and spontaneously offer his alleged victim $1,000,[3] is sufficient to support a reasonable inference that the offer was made with

---

[2] Mr. Patton argues that Jane's subjective understanding of his offer is irrelevant because, by analogy to the crime of true threats, "a speaker's subjective intent to threaten is the pivotal feature separating constitutionally protected speech from constitutionally proscribable true threats." *Taylor*, 379 N.C. at 605, 866 S.E.2d at 753. Mr. Patton overstates the relevance of that observation to his argument, as *Taylor* likewise recognized Supreme Court precedent holding that, "in order to determine whether a defendant's particular statements contain a true threat, a court must consider . . . the reaction of the listeners upon hearing the statement." *Id.* at 600-01, 866 S.E.2d at 750 (citing *Watts v. United States*, 394 U.S. 705, 708, 22 L. Ed. 2d 664, 667 (1969)).

[3] On appeal, Mr. Patton points out his trial testimony that Jane falsely accused him of rape because he refused to pay her $300 in exchange for sex. From there, he argues that this evidence supports an inference that he offered Jane $1,000 to encourage her to "tell the truth" and rescind her allegations against him. But this explanation of his conduct does not arise on the face of the evidence introduced at trial; Mr. Patton never testified, either on direct or cross-examination, as to why he

the intent to interfere with Jane's testimony. The State introduced sufficient competent evidence of the requisite intent and, by extension, the trial court did not err in denying Mr. Patton's motion to dismiss.

## C. Jury Instructions

Mr. Patton next asserts that the trial court: (1) plainly erred in failing to instruct the jury that it must find he threatened Jane to convict him of interfering with a witness; (2) prejudicially erred in failing to instruct on the requirement that his intent be to deter Jane *from testifying* specifically; (3) prejudicially erred in giving the disjunctive instruction that included offering Jane $1,000; and (4) violated his right to a unanimous jury verdict by giving said disjunctive instruction. On review of the relevant facts and law, none of these arguments is convincing.

### 1. Standards of Review

We review preserved challenges to the trial court's jury instructions *de novo*. *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). Omission of a necessary element from the jury instruction is reviewed under the harmless error standard. *State v. Bunch*, 363 N.C. 841, 845, 689 S.E.2d 866, 869 (2010). Adequate prejudice under this standard necessitates some "reasonable probability that [the] outcome would have been different" absent the alleged error. *Id.* at 849, 689 S.E.2d at 871. In undertaking such review, the instructions are to be viewed contextually

---

called Jane from jail. And, in any event, our standard of review requires us to draw all reasonable inferences in the light most favorable to the State, not the defendant.

within the entire jury charge. *Id.* at 847, 689 S.E.2d at 870. A challenged instruction is sufficient "as long as [it] adequately explains each essential element of an offense." *Id.* at 846, 689 S.E.2d at 870 (citation omitted).

Unpreserved challenges to instructions given to the entire jury are reviewed for plain error when distinctly asserted in the appellant's brief. *State v. May*, 368 N.C. 112, 118, 772 S.E.2d 458, 462 (2015). "Plain error with respect to jury instructions requires the error be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Pate*, 187 N.C. App. 442, 445, 653 S.E.2d 212, 215 (2007) (citation omitted).

### 2. *Instructions on Threat and Intent*

Mr. Patton's first asserted error in the jury instructions—that the trial court plainly erred in failing to instruct the jury that any conviction for interfering with a witness required a threat—is precluded by our earlier holding here that a defendant may violate N.C. Gen. Stat. § 14-226 through bribery and without threats. His second argument—that the trial court's instruction failed to properly convey the requisite intent to the jury—is likewise unavailing; the trial court gave the pattern instruction for the offense, which this Court has previously held to be consistent with the statute. *Clagon*, 279 N.C. App. at 434, 865 S.E.2d at 349. Further, the pattern instruction given by the trial court makes clear, through context, that the jury was being asked whether Mr. Patton acted with the intent to interfere in Jane's testimony. The

meaning of jury instructions is to be derived from the instructions' totality:

> It is well established in North Carolina that courts will not find prejudicial error in jury instructions where, taken as a whole, they present the law fairly and clearly to the jury. Isolated expressions of the trial court, standing alone, will not warrant reversal when the charge as a whole is correct.

*State v. Graham*, ___ N.C. App. ___, ___, 882 S.E.2d 719, 727 (2023) (cleaned up). It is evident from the name of the charge as told to the jury, "interfering with *a witness*," and the elements of the charge as instructed—including "that the defendant attempted to deter any person who was summoned *as a witness in the defendant's case*"—that the attempt to deter referenced in the instructions related to Jane's service *as a testifying witness*. *See, e.g., Witness, Black's Law Dictionary* (11th ed. 2019) ("Someone who gives testimony under oath or affirmation").

### 3. *Instruction on $1,000*

As with his first two arguments on alleged error in the jury instructions, we see no merit in Mr. Patton's assertion that the trial court's mention of offering $1,000 in the elements of the charge erroneously permitted the jury to convict him of legal conduct. To be sure, offering someone $1,000 is not, in the abstract, illegal. But such conduct *is* unlawful if made with the intent to "prevent or deter, or attempt to prevent or deter any person summoned or acting as [a] witness from attendance upon such court." N.C. Gen. Stat. § 14-226(a). When viewed in context, that is precisely what the trial court instructed the jury:

> If you find from the evidence beyond a reasonable doubt

> that on or about the alleged date a person was acting as a witness in the defendant's case in a court of this state, and that the defendant . . . *intentionally attempted to deter . . . by calling the victim before his trial and stating he had $1,000 for her*, it would be your duty to return a verdict of guilty.

The trial court thus informed the jury that it could convict Mr. Patton for offering Jane $1,000 only if it amounted to an "intentional[] attempt[] to deter" her from testifying, not for the mere act of offering her money itself. Mr. Patton has therefore failed to show the asserted error in the trial court's instruction.

### 4. *Disjunctive Instruction and Unanimity*

In his final argument, Mr. Patton contends that the disjunctive jury instruction given by the trial court violated his right to a unanimous jury verdict, allowing jurors to convict him for either bribery or the offer of $1,000. He presents this argument under the fatal ambiguity identified in *State v. Lyons*:

> [A] disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense.

330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991) (emphasis in original). But not all disjunctive instructions run afoul of the constitutional requirement for unanimous verdicts. *Id.* For example, in cases involving indecent liberties:

> The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense,

- 18 -

> discrete criminal activities in the disjunctive . . . . [The statute] proscribes simply "any immoral improper, or indecent liberties." Even if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of "any immoral, improper, or indecent liberties." Such a finding would be sufficient to establish the first element of the crime charged.

*State v. Hartness*, 326 N.C. 561, 564-65, 391 S.E.2d 177, 179 (1990).

The statutory crime of interfering with a witness falls within the same category as the indecent liberties statute discussed in *Hartness*. This Court has previously recognized that the statute does not enumerate distinct criminal acts that disjunctively establish discrete offenses; instead, intimidating, threatening, or interfering with a witness are considered "undistinguished parts of a single offense under N.C. Gen. Stat. § 14-226." *Clagon*, 279 N.C. App. at 434, 865 S.E.2d at 349 (citing *Neely*, 4 N.C. App. at 476, 166 S.E.2d at 879). Further, there is no suggestion from the evidence or verdict that Mr. Patton violated N.C. Gen. Stat. § 14-226 in any manner other than attempting to deter Jane from testifying by offering her a $1,000 bribe over the phone. *See Lyons*, 330 N.C. at 307, 412 S.E.2d at 315 (observing that, "[i]n some cases, an examination of the verdict, the charge, the initial instructions by the trial judge to the jury, and the evidence may remove any ambiguity created by the charge" (cleaned up)). Because the disjunctive instruction did not raise the potential for a fatal ambiguity in the jury's guilty verdict, and the evidence and

verdict eliminate any potential ambiguity, we hold that Mr. Patton has failed to demonstrate error in the trial court's disjunctive instruction.

### III.  CONCLUSION

For the foregoing reasons, we hold that the trial court had jurisdiction over the charge of interfering with a witness and that Mr. Patton received a fair trial, free from error.

NO ERROR.

Judges TYSON and ARROWOOD concur.