An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-1004

Filed 15 October 2025

Buncombe County, Nos. 20CRS081859-100, 20CRS082704-100

STATE OF NORTH CAROLINA

v.

WILLIAM TODD MURELL, Defendant.

Appeal by defendant from judgment entered 13 November 2023 by Judge David Strickland in Buncombe County Superior Court. Heard in the Court of Appeals 10 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Robert C. Ennis, for the State.*
>
> *The Sweet Law Firm, PLLC, by Kaelyn N. Sweet, for defendant-appellant.*

DILLON, Chief Judge.

Defendant William T. Murell appeals from judgment entered by the trial court upon a jury verdict convicting him of first-degree forcible rape. Defendant contends that certain witness testimony violated his rights guaranteed by the Confrontation Clause of the Sixth Amendment. Defendant also argues that the trial court erred when it failed to declare a mistrial *ex mero motu* after certain evidence was published

to the jury. For the reasoning below, we conclude Defendant received a fair trial, free of reversible error.

## I.    Background

Defendant and Nina[1] met at a detox facility where both received treatment for alcohol addiction. Eventually, after both left the facility, Nina ended up at Defendant's apartment. Over the course of a few days, Defendant forced Nina to drink alcohol, physically and emotionally abused her, and subjected her to sexual assault. Nina was later removed from Defendant's apartment with the help of her ex-wife ("Ex-wife") and others. After being hospitalized for her injuries, Nina underwent a sexual assault nurse examination ("SANE") conducted by nurse Courtney Sullivan of Mission Hospital. Subsequently, Defendant was charged and indicted for various crimes including first-degree forcible rape, and the case proceeded to a jury trial.

At trial, the State offered testimony from nurse Jacquelline Maillet, rather than Nurse Sullivan, to explain the SANE report and Nina's injuries. Additionally, the State played a video for the jury which referred to previously excluded evidence. The trial court, however, did not declare a mistrial. The jury convicted Defendant of first-degree assault inflicting serious bodily injury and first-degree forcible rape. Defendant timely appeals.

---

[1] A pseudonym.

II.     Analysis

Defendant makes two arguments on appeal, which we address in turn.

A.  The Confrontation Clause

Defendant argues his rights under the Confrontation Clause were violated. Specifically, he contends the trial court erred by allowing a surrogate witness to testify about the contents of Nurse Sullivan's SANE report despite Defendant's constitutional guarantee to confront witnesses against him. Assuming, but not deciding, the admission of this evidence violated the Sixth Amendment, we hold the error was harmless.

We review *de novo* alleged violations of a defendant's constitutional rights and questions of law regarding conformity to the Rules of Evidence. *State v. Abbitt*, 385 N.C. 28, 40 (2023).

The Confrontation Clause of the Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause, however, comes into play when the State seeks to introduce testimonial hearsay. *Smith v. Arizona*, 602 U.S. 779, 784 (2024); *see also State v. Lester*, 387 N.C. 90, 96 (2025). If a statement qualifies as "testimonial hearsay," but the person who made the statement does not testify at trial, then "the 'Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.'" *Lester*, 387 N.C. at 97

(quoting *Michigan v. Bryant*, 562 U.S. 344, 354 (2011)).

Our General Statutes, after a constitutional violation is shown, place the burden on the State to "demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443(b) (2023); *see also State v. King*, 386 N.C. 601, 608 (2024) (explaining that a defendant is entitled to a fair trial, not a perfect trial, and thus, if a constitutional violation is harmless, a defendant is not entitled to reversal). In assessing whether a Confrontation Clause violation was harmless, we look to see whether "other 'competent overwhelming evidence of defendant's guilt exist[s].'" *State v. Lewis*, 361 N.C. 541, 544, 549 (2007).

After being removed from Defendant's apartment, Nina was taken to a local hospital where her extensive injuries were documented, and a CT scan indicated a severe and potentially fatal head injury. Due to Nina's head injury, she was transferred to Mission Hospital where she was interviewed by Nurse Sullivan. Nurse Sullivan completed a SANE and compiled the photographs she took and Nina's interview statements into a report.

When the case came for trial, Nurse Sullivan no longer worked at Mission Hospital; and the State opted to call Nurse Maillet, the program coordinator at Mission Hospital, as an expert on SANE reports to testify regarding the contents of Nurse Sullivan's SANE report. The trial court overruled Defendant's objection to Nurse Maillet's testimony based on the Confrontation Clause.

During the State's direct, Nurse Maillet walked through each component of the

SANE report and opined on whether Nurse Sullivan's photographs were consistent with the statements in the report from Nina to Nurse Sullivan.

Defendant claims he was prejudiced by this testimony as the testimony supported two of the elements of the crime for which Defendant was convicted.

Defendant was convicted of first-degree forcible rape, which required the State to prove, in part, that Defendant "use[d], threatene[d] to use, or display[ed] a dangerous or deadly weapon" and/or "inflict[ed] serious personal injury upon the victim." N.C.G.S. § 14-27.21(a)(1), (2) (2023). Defendant argues Nurse Maillet's testimony about Nurse Sullivan's SANE report was offered by the State to prove these two elements.

With respect to the "dangerous or deadly weapon" element of § 14-27.21, the jury only found that Defendant committed first-degree forcible rape by inflicting serious personal injury upon Nina. To that end, because the jury did not convict Defendant under the deadly weapon theory, Defendant's contention that the trial court reversibly erred in allowing the SANE report statements which stated Defendant "held a knife to [Nina's] neck" did not contribute to his conviction. Thus, this error was harmless. *See State v. Bunch*, 363 N.C. 841, 845 (2010) ("On a general level, '[a]n error is harmless beyond a reasonable doubt if it did not contribute to the defendant's conviction.' "). Accordingly, we limit our analysis to the issue of "serious personal injury."

"Serious personal injury" may be proven by either mental or bodily injury.

*State v. Boone*, 307 N.C. 198, 204 (1982). However, in the context of mental or emotional injury, "the State must prove that the defendant caused the harm, that it extended for some appreciable period of time beyond the incidents surrounding the crime itself, and that the harm was more than the '*res gestae*' results present in every forcible rape." *State v. Baker*, 336 N.C. 58, 62–63 (1994) (italics in original); *see also State v. Blizzard*, 169 N.C. App. 285, 297–299 (2005).

Ex-wife testified at trial to the lasting effect of the mental and emotional harm Defendant inflicted on Nina. Specifically, Ex-wife recounted how Nina would awake from nightmares, became paranoid and forgetful, and "could rarely stay by herself." When asked if Ex-wife noticed any changes to Nina, Ex-wife responded that Nina "was almost a completely different person." During Nina's testimony, she explained how when she attempted to return to work, she would experience panic attacks and would get overwhelmed and confused. The record indicates that the mental and emotional harm Defendant caused was not the *res gestae* results incident to a forcible rape, but rather harm that persisted for an appreciable time.

The State also offered other evidence, apart from the SANE report, showing bodily injury. "Serious personal injury" based on bodily injury is satisfied by "injur[ies] inflicted on the victim to overcome resistance or to obtain submission[.]" *State v. Herring*, 322 N.C. 733, 739 (1988) (quoting *State v. Blackstock*, 314 N.C. 232, 242 (1985)). When asked about Defendant's sexual assaults, Nina explained why she submitted to them:

A. You know, at first it was "Don't," but then I was so scared of being put back into the punishment corner or being drug out of the house, that you just kind of realize it's better to just take it than get hurt again.

Q. What happened when you protested? When you went to the punishment corner, what happened?

A. He would kick me, slap me, just rough -- I mean, I think -- I don't even, like, remember sometimes all of it because I think I just blanked out.

Thus, the State offered other competent overwhelming evidence that showed Defendant inflicted serious personal injury, whether it be a theory based on bodily injury or on mental and emotional injury. Accordingly, we conclude any violation of Defendant's right to confrontation was harmless beyond a reasonable doubt.

B. Inadmissible evidence published to the jury

Defendant also argues that after a video, which referred to previously excluded evidence, was played for the jury, the trial court erred by failing to declare a mistrial *ex mero motu*, or in the alternative plainly erred by giving the jury an inadequate limiting instruction. Again, we disagree.

Prior to trial, the State attempted to consolidate the charges against Defendant arising out of Nina's incident with other charges brought against Defendant for alleged crimes against a different victim. The trial court, however, severed the cases due to their differences. The State then sought to introduce the other victim's testimony under Rule 404(b) of our Rules of Evidence via a pretrial motion. The trial court declined to admit that testimony.

At trial, however, the State played body-camera footage of the police searching Defendant's home, in which an officer referred to clothing that potentially belonged to the other victim. After Defendant's objection, the trial court removed the jury; and Defendant's counsel suggested that the trial court issue a limiting instruction. The State agreed, and the trial court permitted both the State and Defendant's counsel to draft the instruction.

The trial court ultimately gave the following limiting instruction to address the situation:

> It is inappropriate, ladies and gentlemen, to refer to an alleged victim as a "victim" or "victims" during a trial. The word "victim's" was inadvertently used in this video. I instruct you that you must disregard that in this instance and any other instance if it has occurred in this trial.

Defendant did not object to this limiting instruction, nor did Defendant elect to move for a mistrial. The next day, the trial court informed the parties that it was contemplating declaring a mistrial *ex mero motu*. In response, Defendant's counsel stated that he believed that "the limiting instruction has been sufficient to cure the issue" and requested the trial court not declare a mistrial.

As Defendant failed to object to the limiting instruction at trial, our Rules of Appellate Procedure generally require this court to review for plain error. *See* N.C. R. App. P. 10(a)(4). However, our General Statutes provide that "[a] defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C.G.S. § 15A-1443(c). In other words, "[a] criminal defendant will

not be heard to complain of a jury instruction given in response to his own request." *State v. Gillard*, 386 N.C. 797, 817 (2024) (citations omitted) (reasoning that because the defendant requested the trial court give the limiting instructions, any error which resulted was invited error); *see also State v. Hooper*, 382 N.C. 612, 626 n.4 (2022) ("[A] finding of invited error must hinge upon a party's affirmative request for a specific action upon the part of the trial court . . . .").

Here, Defendant requested the trial court provide the jury with a limiting instruction and then assisted the State in crafting the instruction which was ultimately given. Defendant's affirmative acts were instrumental in creating what Defendant now argues was error. Thus, any error in the limiting instruction amounts to invited error.

For the same reasons, we cannot agree that, assuming it was error, the trial court erred when it did not declare a mistrial. Trial courts may declare a mistrial *ex mero motu* when "[i]t is impossible for the trial to proceed in conformity with the law." N.C.G.S. § 15A-1063(1) (2023). We review a trial court's decision not to declare a mistrial for abuse of discretion. *State v. Taylor*, 362 N.C. 514, 538 (2008). But again, Defendant invited this alleged error. The record indicates that the trial court thoughtfully considered the issue and informed the parties that he was still contemplating declaring a mistrial *ex mero motu*. Defendant, however, "respectfully objected" and requested the trial court not do so. Therefore, Defendant's affirmative acts likewise invited any error the trial court may have committed when it declined

to declare a mistrial. In any event, we conclude the trial court did not abuse its discretion in not declaring a mistrial.

### III. Conclusion

Defendant received a fair trial, free of reversible error.

NO ERROR.

Judges ZACHARY and FREEMAN concur.

Report per Rule 30(e).